# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

State Farm Mutual Automobile Insurance Company,

      Plaintiff,

v.

Physiomatrix, Inc.,
Genex Physical Therapy, Inc.,
Kallil I. Kazan, D.C.,
Naim Khanafer, D.C.,
Sami Abu Farha, M.D.,
Sami Abu Farha, M.D., P.C.,
Tete Oniang'o, M.D.,
Tete Oniang'o, M.D., P.L.L.C.,

      Defendants.

Case No. 2:12-cv-11500-JCO-DRG
Hon. John Corbett O'Meara
Magistrate Judge David R. Grand

**JURY TRIAL DEMANDED**

/

## DEFENDANTS SAMI ABU FARHA, M.D. AND SAMI ABU FARHA, M.D., P.C.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Defendants Sami Abu Farha, M.D. and Sami Abu Farha, M.D., P.C. (collectively referred to herein as "the Abu Farha defendants"), by their attorneys Mantese Honigman Rossman and Williamson, P.C., hereby move for an Order to dismiss the claims against them, in whole or in part, pursuant to *Fed. R. Civ. P. 12(b)(6)* and for the reasons set forth below and in the attached Brief, which include, but are not limited to, Plaintiff's lack of standing to bring all or part of the claims set forth in the Complaint and Plaintiff's failure to state a claim upon which relief can be granted.

There was an e-mail exchange between attorneys for the parties entitled to be heard on this motion, in which the movants explained the nature of the motion and its legal basis; and the Abu Farha defendants requested but did not obtain concurrence in the relief sought.

**WHEREFORE**, the Abu Farha defendants request a dismissal of Plaintiff's Complaint with prejudice and with costs and attorney fees awarded in favor of Defendants.

Respectfully submitted,

   /s/Brendan H. Frey
Gerard V. Mantese (P34424)
Brendan H. Frey (P700893)
MANTESE HONIGMAN ROSSMAN
and WILLIAMSON, P.C.
1361 E. Big Beaver Road
Troy, Michigan 48083
(248) 457-9200
(248) 457-9201 (Fax)
gmantese@manteselaw.com
bfrey@manteselaw.com

Dated: May 21, 2012

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

State Farm Mutual Automobile Insurance Company,

      Plaintiff,

v.

Physiomatrix, Inc.,
Genex Physical Therapy, Inc.,
Kallil I. Kazan, D.C.,
Naim Khanafer, D.C.,
Sami Abu Farha, M.D.,
Sami Abu Farha, M.D., P.C.,
Tete Oniang'o, M.D.,
Tete Oniang'o, M.D., P.L.L.C.,

      Defendants.

Case No. 2:12-cv-11500-JCO-DRG
Hon. John Corbett O'Meara
Magistrate Judge David R. Grand


**JURY TRIAL DEMANDED**

---

## DEFENDANTS SAMI ABU FARHA, M.D. AND
## SAMI ABU FARHA, M.D., P.C.'S BRIEF IN SUPPORT OF MOTION
## <u>TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>

## ISSUES PRESENTED

I.     Plaintiff's common law claims should be dismissed because Michigan's no-fault laws do not provide a private cause of action to State Farm for insurance fraud or unjust enrichment and Michigan's no-fault laws abrogated State Farm's common law claims in the context of claims for no-fault insurance benefits.


II.    Plaintiff's RICO claims should be dismissed because, pursuant to the McCarran-Ferguson Act, 15 U.S.C. § 1012, RICO is preempted by Michigan's no-fault insurance laws.


III.   Plaintiff's claims should be dismissed because Plaintiff has failed to plead facts sufficient to support a plausible fraud claim or plausible RICO claims where Plaintiff fails to specify what statements were fraudulent or how it claims any specific statements were fraudulent, Plaintiff fails to allege facts sufficient to support the plausible existence of a RICO enterprise, and Plaintiff fails to allege facts sufficient to plausibly establish that the Abu Farha defendants participated in the conduct of the alleged RICO enterprise.


IV.    Plaintiff's unjust enrichment claim should be dismissed because there are express contracts governing the benefit claims at issue and unjust enrichment cannot be applied where an express contract exists.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>Case law</u>

*Advocacy Org. for Patients and Providers v. ACIA*, 176 F.3d 315 (6th Cir. 1999)

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485 (6th Cir. 1990)

*Hoerstman General Contracting, Inc. v. Hahn*, 474 Mich. 66; 711 N.W.2d 340 (2006)

*Humana Inc. v. Forsyth*, 525 U.S. 299 (1999)

*Jennings v. Emry*, 910 F.2d 1434 (7th Cir. 1990)

*Kammer Asphalt Paving v. East China Twp. Schools*, 443 Mich. 176 (1993)

*Libertad v. Welch*, 53 F.3d 428 (1st Cir. 1995)

*Millross v. Plum Hollow Golf Club,* 429 Mich. 178; 413 N.W.2d 17 (1987)

*Reeves v. Ernst & Young*, 507 U.S. 170 (1993)

*Richmond v. Nationwide Cassel, L.P.,* 52 F.3d 640 (7th Cir. 1995)

*Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505 (6th Cir. 2010)

*Ross v. Auto Club Group*, 748 N.W.2d 552 (Mich. 2008)

*Schmuck v. United States*, 489 U.S. 705 (1989)

*Sedima SPRL v. Imrex. Co.*, 473 US 479 (1985)

*Shavers v. Attorney General*, 267 N.W.2d 72 (Mich. 1978)

*Union Labor Life Insurance Co. v. Pireno*, 458 U.S. 119 (1982)

*United States Department of Treasury v. Fabe*, 508 U.S. 491 (1993)

*United States v. Ferguson*, 727 F.2d 555 (6th Cir. 1984)

*Vild v. Visconsi*, 956 F.2d 560 (6th Cir. 1992)

*Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787 (6th Cir. 2009)

Statutes

15 U.S.C. § 1012 (the McCarran-Ferguson Act)

Mich. Comp. Laws § 500.3101, *et. seq.*

Mich. Comp. Laws § 500.4501, *et seq.*

Federal Rules of Civil Procedure

Fed.R.Civ.P. 9(b)

Fed.R.Civ.P. 12(b)(6)

## INDEX OF EXHIBITS

**Exhibit 1** - *Allstate Insurance Company v. Global Medical Billing, Inc., et al.*, Case No. 09-cv-14975, 2011 U.S. Dist. LEXIS 17448 (February 23, 2011)

**Exhibit 2** - *Allstate Ins. Co. v. Ruben*, Oakland County Circuit Court Case No. 02-0415888-NF (2003)

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     BACKGROUND AND ALLEGED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    Plaintiff lacks standing to bring the claims asserted in this case because the no-
              fault act does not provide a private cause of action to State Farm and the no
              fault regime abrogated State Farm's common law claims in the context of
              no-fault benefit claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        C.    Pursuant to the McCarran-Ferguson Act, Plaintiff's RICO claims are
              pre-empted by Michigan's no-fault insurance laws. . . . . . . . . . . . . . . . . . . . 10

              1.    RICO does not "specifically relate to the business of insurance." . . . . . 11

              2.    The Michigan no-fault laws were enacted for the purpose of
                    regulating the business of insurance. . . . . . . . . . . . . . . . . . . . . . . . . 11

              3.    Application of RICO would impair Michigan's no-fault laws. . . . . . . . . 13

        D.    Plaintiff fails to plead facts sufficient to support a RICO or Fraud action. . . . . . 19

              1.    Pleading standards applicable to RICO and Fraud actions. . . . . . . . . . . 19

              2.    State Farm fails to allege facts sufficient to support the plausible
                    existence of a  RICO enterprise. . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

              3.    State Farm fails to allege facts sufficient to plausibly establish that
                    the Abu Farha defendants participated in the conduct of the alleged
                    RICO enterprise. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

              4.    State Farm fails to allege facts sufficient to plausibly establish fraud,
                    mail fraud, or any racketeering activity. . . . . . . . . . . . . . . . . . . . . . . . 22

        E.    Plaintiff has failed to plead facts sufficient to support
              a claim of unjust enrichment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## I.    INTRODUCTION

State Farm has adopted a predetermined protocol of engaging in litigation to harass medical providers who submit claims for personal protection insurance benefits on behalf of State Farm policy holders. In an effort to decrease the number of claims paid for personal protection benefits, State Farm accuses busy health care providers such as Dr. Abu Farha of racketeering in an effort to intimidate the health care providers from submitting claims. Since personal protection claims are a relatively small source of revenue for busy providers like Dr. Abu Farha, State Farm apparently believes that if it makes life difficult for Dr. Abu Farha, and others like him, and tarnishes his highly regarded reputation in the community by asserting RICO claims associated with La Cosa Nostra, it will cut down on the number of providers who submit claims for benefits. These nefarious litigation tactics harm the State Farm policyholders by reducing their options for health care services.

In other words, State Farm is interested in collecting premiums, but is not interested in paying claims. Filing lawsuits alleging insurance fraud and RICO violations is an inappropriate way for State Farm to carry out a business strategy of increasing profits from the Michigan no-fault system. *See Lakeland Neurocare Centers v. State-Farm Mut. Auto. Ins. Co.*, 645 N.W.2d 59, 64 (Mich. App. 2002)("the no-fault act may not be used by a no-fault insurer as a vehicle to shift the burden of the injured person's economic loss to a health care provider or as a weapon against rightful payees to a payee's unjustified economic detriment.")

Michigan's no-fault insurance is governed by a comprehensive regulatory scheme. A primary objective of the no-fault system is to limit the amount of litigation arising from automobile accidents. The no-fault system accomplishes this by limiting the civil actions that can be brought in relation to automobile accidents and related claims for benefits. *See* Michigan

1

Insurance Code, Act 218 of 1956, Preamble ("AN ACT . . . to modify tort liability arising out of certain accidents; to provide for limited actions with respect to that modified tort liability and to prescribe certain procedures for maintaining those actions.") Michigan citizens and insurers are equally subject to these rules and regulations. Plaintiff's claims are not provided for within the no-fault regime and should be dismissed for all the reasons set forth below.

## II.   BACKGROUND AND ALLEGED FACTS

Plaintiff's claims all arise from payments made to Defendants pursuant to the administrative regime created by the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et. seq.* The Michigan No-Fault Act requires insurers to pay personal protection benefits. MCL § 500.3142. Personal protection benefits include "allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation" when those expenses are related to "accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle." *See* MCL §§ 500.3105, 3107(1)(a). Under Michigan law, insureds can assign their contractual right to no-fault benefits to providers for medically necessary services. Pursuant to these assignments, providers may submit the insureds' claims directly to insurers. Thus, a medical provider, such as Dr. Abu Farha, is a "claimant" under the Michigan no-fault laws, and the submission to State Farm of a bill for medical services is "a claim for personal protection insurance benefits for the benefit of [the] insured." *Lakeland Neurocare*, 645 N.W.2d at 63.

In its Complaint, Plaintiff alleges multiple conspiracies each involving some portion of Defendants agreeing to defraud State Farm by submitting fraudulent Michigan no-fault insurance claims. State Farm lumped all of the Defendants together in one action to give the impression of a large conspiracy. However, State Farm does not allege any connection between the Abu Farha

2

defendants and other defendants other than the fact that some Abu Farha patients have apparently attended physical therapy at Physiomatrix and Genex. State Farm does not allege that these patients have been directed to Physiomatrix or Genex by the Abu Farha defendants. The Abu Farha defendants do not refer patients to any particular physical therapy provider.

Having paid claims submitted by the Abu Farha defendants since at least 2007, State Farm now asserts causes of action for Fraud, RICO, RICO Conspiracy, and Unjust Enrichment against the Abu Farha defendants, seeking damages related to these insurance claims as well as claims allegedly submitted by the clinic defendants. Even viewing the allegations in a light most favorable to State Farm, all claims against the Abu Farha defendants are based on alleged facts that either were known or should have been known at the time State Farm paid each insurance claim after determining it to be reasonable.

For instance, State Farm alleges that "[t]he documentation that Dr. Abu Farha submits to State Farm consists of a one-page, handwritten sheet with virtually illegible notes." (Complaint, ¶ 55 and Ex 7). This is the same documentation and same sloppy physician handwriting State Farm reviewed when paying the claims. In the past, State Farm has asked Dr. Abu Farha to re-write claims to make them more legible, and he does so when requested.

State Farm also alleges that "**[t]he Initial Exam Reports establish** that Dr. Abu Farha fails to properly examine the patients because he does not perform motor or sensory testing, and does not quantify limitations, if any, to range of motion, if he documents range of motion at all." (Complaint, ¶ 55)(emphasis added). As noted by State Farm, this is all information that, assuming its accuracy for the purposes of this motion, was established at the time State Farm paid the claims.

3

State Farm alleges that "Dr. Abu Farha diagnoses some patients with radiculopathies . . . despite normal neurological exams or no neurological exams at all." (Complaint, ¶ 55). Assuming the accuracy of these allegations for this motion, the facts were known at the time State Farm paid the claims.

State Farm alleges that Dr. Abu Farha uses pre-printed forms. (Complaint, ¶ 56). These are the same forms State Farm reviewed when it paid the claims. State Farm alleges that "Dr. Abu Farha routinely signs Medical Certificates, examples of which are attached [to the Complaint] as Exhibit 9[.]" (Complaint, ¶ 57). These are the same Medical Certificates that were issued at the time State Farm paid the claims. State Farm alleges that "Dr. Abu Farha also prescribes narcotic pain medication to patients despite that, in most cases, narcotics would not be indicated." (Complaint, ¶ 58). When it paid the claims, State Farm agreed the narcotic prescriptions were reasonable.

State Farm further alleges "[t]hereafter, Dr. Abu Farha purports to re-examine the patient the following month, at which point he renders the same predetermined diagnosis, and sends the patient back to the Clinics for another four weeks of the same physical therapy." (Complaint, ¶ 59).

State Farm does not identify any specific facts to support the conclusory allegations listed above. State Farm does not identify any instance where narcotics were unreasonably prescribed. State Farm does not identify any specific instance where a medical certificate was unreasonably provided. State Farm does not identify any specific instance where radiculopathy was diagnosed but not indicated. State Farm attaches some forms to its Complaint as exhibits, but does not explain how these forms relate to its allegations. For instance, there is no reference to radiculopathy or narcotics on any State Farm exhibits relating to the Abu Farha defendants. State

4

Farm does not allege one single instance where Dr. Abu Farha prescribed physical therapy that was not indicated by the physical exam. State Farm does not identify any instance where physical therapy was initially indicated, but should not have been indicated upon a re-exam. State Farm does not even identify what percentage of the patients returned for a re-exam.[1]

Further, each of the patients apparently decided on their own to attend physical therapy at Physiomatrix or Genex. State Farm does not allege the patients are part of the alleged RICO enterprise. State Farm's Exhibit 14 to the Complaint even provides evidence of a patient who was in need of physical therapy and was simply alleging that Physiomatrix failed to adequately provide the physical therapy needed. The patient was requesting approval of physical therapy at another location! If a patient has back pain or knee pain and Dr. Abu Farha prescribes physical therapy, he does not control what the physical therapist does with the patient.

State Farm's allegation of Dr. Abu Farha's role in the alleged conspiracy is also contradicted within the Complaint. At certain points State Farm alleges that Dr. Abu Farha is needed to carry-out the scheme because prescriptions are only good for 90 days. (e.g., Complaint, ¶ 26). At other times, State Farm alleges the scheme requires Dr. Abu Farha to re-examine the physical therapy patients every four weeks. (e.g., Complaint, ¶ 59). Moreover, accepting the Complaint's allegations as true for this motion, this is all notwithstanding the fact that Dr. Oniang'o is apparently on-site at the clinics and available to examine and re-examine physical therapy patients. (Complaint, ¶ 65).

State Farm alleges that all of the above and Dr. Abu Farha's Initial Exam Reports demonstrate "pervasive patterns" that indicate insurance fraud. The patterns amount to a history of State Farm being billed for medical evaluations of individuals who have been in automobile

---

[1]  If this is what State Farm means by "Physical Therapy Re-eval" on exhibit 1A, over 61% apparently had 0-1 re-evaluation.

accidents and who came to Dr. Abu Farha complaining of back pain, knee pain, or other injuries arising from the automobile accidents and for which Dr. Abu Farha has prescribed physical therapy. This is the type of pattern one would obviously expect to find in State Farm's claims history, and does not give rise to any plausible allegation of fraud, RICO, RICO Conspiracy, or unjust enrichment.

## III.    ARGUMENT

### A.    Standard of Review

"A motion for dismissal pursuant to *Rule 12(b)(6)* will be granted if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). It is no longer sufficient for parties to aver the minimum level of facts sufficient to establish a mere possible entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Instead, the Complaint must set forth a heightened level of factual specificity sufficient to demonstrate a plausible entitlement to relief. *Id.* To satisfy this requirement, the complaint must contain a level of facts sufficient to nudge the claims across the line from conceivable to plausible. *Id.* at 570.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). This standard requires more than mere formulaic recitation of the elements of the cause of action, and conclusory statements that the elements are satisfied. *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S.Ct. at 1949. Bare assertions that a defendant played a particular role in the alleged conduct are insufficient to satisfy the pleading requirements. *Iqbal*, 129 S.Ct. at 1951. "Further, 'courts may infer from the factual allegations in

6

the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Kivisto v. Miller, Canfield, Paddock and Stone, PLC,* 413 Fed. Appx. 136, 138 (11th Cir. 2011)(quoting *American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010); and, also quoting *Iqbal*).

State Farm's fraud claim and its RICO claims, which are based on allegations of mail fraud, "must comply not only with the plausibility criteria articulated in Twombly and Iqbal but also with *Fed.R.Civ.P. 9(b)'s* heightened pleading standard, which requires that when alleging fraud…, a party must state with particularity the circumstances constituting fraud[.]" *Kivisto, supra* at 139; *DeLorean v. Cork Gully*, 118 B.R. 932, 940 (E.D. Mich. 1990).

"In a situation involving an affirmative defense, 'the claim is stated adequately . . . , but in addition to the claim the contents of the complaint includes matters of avoidance that effectively vitiate the pleader's ability to recover on the claim. In [such a] situation[] the complaint is said to have a built-in defense and is essentially self-defeating.'" *Riverview Health*, 601 F.3d at 512.

**B.    Plaintiff lacks standing to bring the claims asserted in this case because the no-fault act does not provide a private cause of action to State Farm and the no fault regime abrogated State Farm's common law claims in the context of no-fault benefit claims.**

To bring this action, Plaintiff must first establish constitutional standing and prudential standing. "A plaintiff bears the burden of demonstrating standing and must plead its components with specificity." *Am. Civil Liberties Union of Ohio v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004).

Plaintiff fails to satisfy the prudential standing requirements. To establish prudential standing, Plaintiff must set forth claims that: (1) "assert [its] own legal rights and interests"; (2) are more than a "generalized grievance"; and (3) "fall within the 'zone of interests' regulated by

the statute in question." *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009)(citing

*Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)).

      The "zone of interests" at issue in this case is governed by Michigan's comprehensive

no-fault laws. Michigan has enacted a comprehensive statutory scheme governing, *inter alia*, the

relationship between insurers and insured auto owners. Michigan's regime does not provide

insurers such as State Farm with the authority to bring the claims asserted in this case.

      Michigan's no-fault insurance laws were designed to reduce the amount of litigation

arising from automobile accidents. *See* Michigan Insurance Code, Act 218 of 1956, Preamble

("AN ACT . . . to modify tort liability arising out of certain accidents; to provide for limited

actions with respect to that modified tort liability and to prescribe certain procedures for

maintaining those actions.") With this policy objective in mind, the legislature placed limits on

the right of citizens, except in limited circumstances, to sue for damages related to automobile

accidents. Likewise, the legislature decided that fraudulent benefits claims should be prosecuted

only by certain authorized agencies. MCL § 500.4501, *et seq.* The statute defines "authorized

agencies" as:

> The department of state police; a city, village, or township police department; a
> county sheriff's department; a United States criminal investigative department or
> agency; the prosecuting authority of a city, village, township, county, or state or
> of the United States; the insurance bureau; or the department of state.

MCL § 500.4501(a). State Farm is not authorized to prosecute insurance fraud claims.

      Thus, courts in this District have recognized that private insurers do not have standing to

bring claims such as those asserted by Plaintiff in this case. As the Honorable Lawrence Zatkoff

recently held when dismissing similar claims brought by Allstate Insurance Company:

> Section 500.4511 sets forth the criminal sanctions for a person who acts alone or
> conspires with others to commit a fraudulent insurance act. The statute expressly
> delegates 'authorized agencies' the power to criminally prosecute persons or

8

insurers for acts of insurance fraud, however, and Plaintiff is not listed as . . . one of the authorized agencies. The statute does not create or provide for a private cause of action. Finally, the statute's language specifies the action an insurer such as Plaintiff can pursue, *i.e.*, reporting the allegedly fraudulent behavior to an authorized agency. *See* Mich. Comp. Laws § 500.4507(2) ('if an insurer knows or reasonably believes it knows the identity of a person who it has reason to believe committed a fraudulent insurance act . . ., the insurer . . . may notify an authorized agency of the knowledge or belief and provide any additional information.')

> For those reasons, the Court concludes that Plaintiff has not demonstrated that it is a 'proper proponent, and [that this] action [is] a proper vehicle, to vindicate the rights asserted.' *Wuliger*, 567 F.3d at 793. As such, the Court finds that Plaintiff has failed to establish constitutional and prudential standing.

*Allstate Insurance Company v. Global Medical Billing, Inc., et al.*, Case No. 09-cv-14975, 2011 U.S. Dist. LEXIS 17448, *11-12 (February 23, 2011)(Exhibit 1).

Likewise, Michigan courts have held that the comprehensive statutory no-fault scheme provides no place for equitable claims such as Plaintiff's unjust enrichment claim. *Allstate Ins. Co. v. Ruben*, Oakland County Circuit Court Case No. 02-0415888-NF, p. 9 (2003) (Exhibit 2) ("Under this rigorous analysis plaintiff's unjust enrichment claim simply cannot survive nor can its remedy of restitution. Again, both are so comprehensively governed by a statutory scheme here that involves reasonableness and necessity that a court of equity cannot and should not be invoked at this juncture."); *see also, Riverview Health*, 601 F.3d at 517 ("The Ohio General Assembly has specified the remedies for violating the Prompt Pay Act and has therefore, preempted the field and a common law cause of action cannot be implied.")

Thus, the fraud and unjust enrichment claims asserted by State Farm are not viable in light of the comprehensive procedures Michigan's legislature provided for payment of no-fault insurance claims. As the Michigan Supreme Court has held: "[i]n general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended

that the statute supersede and replace the common law dealing with the subject matter." *Millross v. Plum Hollow Golf Club,* 429 Mich. 178, 183; 413 N.W.2d 17 (1987). This is an application of the legal maxim *expressio unius est exclusio alterius.*[2] *Hoerstman General Contracting, Inc. v. Hahn*, 474 Mich. 66, 74; 711 N.W.2d 340 (2006). The Michigan Supreme Court "long ago stated that no maxim is more uniformly used to properly construe statutes." *Hoerstman*, at 75 (citing *Taylor v. Michigan Public Utilities Comm*, 217 Mich. 400, 403; 186 N.W. 485 (1922)).

In addition to the remedies noted by Judge Zatkoff in *Global Medical*, Plaintiff could have denied the insurance claims at issue if it found them unreasonable, or it could have requested additional information to substantiate the claims. *See* MCL § 500.3159. Plaintiff paid the claims because it found them reasonable based on the documentation submitted. Plaintiff should not now be able to bring this action with the sole basis being that it now feels too many claims have been submitted from Dr. Abu Farha. Nothing has changed about the claims that were paid, which State Farm determined to be reasonable.

**C.      Pursuant to the McCarran-Ferguson Act, Plaintiff's RICO claims are pre-empted by Michigan's no-fault insurance laws.**

Plaintiff's RICO claims are reverse preempted pursuant to the McCarran-Ferguson Act. McCarran-Ferguson provides that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). McCarran-Ferguson further provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically related to the business of insurance." *Id.* § 1012(b). "In other words, the McCarran-Ferguson Act bars the

---

[2] "The expression of one thing is the exclusion of another." Black's Law Dictionary (7th ed), p 1635.

application of a federal statute if the federal statute does not relate specifically to the business of insurance, a state statute has been enacted to regulate the business of insurance, and the federal statute would invalidate, impair, or supersede the state statute." *LaBarre v. Credit Acceptance Corporation*, 175 F.3d 640, 643 (8th Cir. 1999) (citing *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999)). The Sixth Circuit has found RICO preempted by state insurance laws similar to those governing Michigan's no-fault regime. *See Riverview Health*, 601 F.3d 505.

1.      **RICO does not "specifically relate to the business of insurance."**

To determine if RICO is reverse preempted, the Court must first determine "whether the federal statute at issue 'specifically relates to the business of insurance.'" *Riverview Health*, 601 F.3d at 514. It is well established that "RICO is not a law that 'specifically relates to the business of insurance.'" *Humana*, 525 U.S. at 307. This factor supports a finding of preemption.

2.      **The Michigan no-fault laws were enacted for the purpose of regulating the business of insurance.**

Three criteria are considered to determine whether an activity is part of the "business of insurance": (1) "whether the practice has the effect of transferring or spreading a policyholder's risk," (2) "whether the practice is an integral part of the policy relationship between the insurer and the insured," and (3) "whether the practice is limited to entities within the insurance industry." *Union Labor Life Insurance Co. v. Pireno*, 458 U.S. 119, 129 (1982). "No one factor is dispositive." *Riverview Health*, 601 F.3d at 515.

The Supreme Court has held that "[t]here can be no doubt that the actual performance of an insurance contract falls within the business of insurance." *United States Department of Treasury v. Fabe*, 508 U.S. 491, 503 (1993). Moreover, "[w]ithout performance of the terms of the insurance policy, there is no risk transfer at all." *Id.* at 504.

With respect to the second *Pireno* prong, the Sixth Circuit has held as follows:

11

> In determining what is integral to the policy relationship, 'the focus is on the extent to which the state law furthers the interests of the policyholders.' Therefore, '[w]hat constitutes 'an integral part of the policy relationship' is . . . determined by reference to the interests of the policyholders.' 'Where a state law protects state insurance-policyholders, it is a 'law enacted . . . for the purpose of regulating the business of insurance.'

*Riverview Health*, 601 F.3d at 515.

The Sixth Circuit continued with respect to the third *Pireno* prong as follows:

> The inquiry into whether the state statute at issue seeks to regulate a practice that is limited to entities within the insurance industry is not determinative but 'courts should take this factor into account because '[a]rrangements between insurance companies and parties outside the insurance industry can hardly be said to lie at the center of [the] legislative concern' of 'protect[ing] *intra-industry* cooperation in the underwriting of risks.'

*Id.* In other words, when analyzing the application of McCarran-Ferguson, not every business relationship an insurer enters into falls within "the business of insurance." However, cases relating to the performance of an insurance contract, such as this case, clearly involve a state statute that "has been enacted to regulate the business of insurance." *Id.*

The laws governing Michigan's no-fault auto insurance regime are found within the Michigan Insurance Code, Act 218 of 1956, and were aimed at, among other things, regulating the relationship between insurance companies and policy-holders. The Michigan Insurance Code Preamble demonstrates that the statutes therein were enacted to regulate the business of insurance. The Preamble provides, in pertinent part, as follows:

> AN ACT to revise, consolidate, and classify the laws relating to the insurance and surety business; . . . to modify tort liability arising out of certain accidents; to provide for limited actions with respect to that modified tort liability and to prescribe certain procedures for maintaining those actions; to require security for losses arising out of certain accidents; to provide for the continued availability and affordability of automobile insurance . . . and to facilitate the purchase of that insurance by all residents of this state at fair and reasonable rates; . . . to provide for the departmental supervision and regulation of the insurance and surety business within this state; . . . and, to provide certain powers and duties upon

12

certain officials, departments, and authorities of this state; . . . and to provide penalties for violation of this act.

Michigan Insurance Code, Act 219 of 1956, Preamble.

Further, the specific claims at issue in this case relate to the performance of State Farm's contracts providing for automobile insurance to its policyholders. Under Michigan law, insureds can assign their contractual right to no-fault benefits to providers for medically necessary services. Pursuant to these assignments, providers may submit the insureds' claims directly to insurers. Thus, "a claim for personal protection insurance benefits [is] for the benefit of [the] insured[,]" and Dr. Farha is standing in the shoes of the insured when submitting a claim to State Farm. *Lakeland Neurocare*, *supra* at 63.

Therefore, the allegations in the Complaint "relate to the actual performance of the insurance contract[s] between [State Farm] and its insureds, thus satisfying all three prongs of the *Pireno* test. Accordingly, Plaintiff['s] federal RICO claims fall within the 'business of insurance' requirement for reverse preemption." *Riverview Health*, *supra* at 515.

### 3.   Application of RICO would impair Michigan's no-fault laws.

The Supreme Court has held "that to 'impair' a law is to hinder its operation or 'frustrate a goal' of that law." *Humana*, 525 U.S. at 311. Further, "the dictionary definition of 'impair' is 'to weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner.'" *Id.* at 310, quoting Black's Law Dictionary 752 (6th ed. 1990). Federal law impairs a state law when it directly conflicts with state law, frustrates any declared state policy, or interferes with a State's administrative regime. *Id.* at 311.

Michigan's no-fault laws provide "a system of compulsory insurance, whereby every Michigan motorist would be required to purchase no-fault insurance or be unable to operate a motor vehicle legally in this state." *Shavers v. Attorney General*, 267 N.W.2d 72, 77 (Mich.

13

1978). It "was offered as an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or 'fault') liability system." *Id.* The no-fault personal protection insurance scheme, with its "comprehensive and expeditious benefit system" addressed problems under the former system which denied benefits to a high percentage of motor vehicle accident victims, overcompensated minor injuries, undercompensated serious injuries, involved long payment delays, overburdened the court system, and discriminated against those with low income and little education. *Id.*; *see also, United States v. Ferguson*, 727 F.2d 555, 558 (6th Cir. 1984).

To effectuate these policies and purposes, Michigan's no-fault system provides a comprehensive methodology for presenting and paying automobile-related injury claims. A provider of medical services to a person injured in an automobile accident that submits a claim for the benefit of an insured bears the burden of providing reasonable proof of the fact and of the amount of loss sustained. MCL § 500.3142(2); *see also Williams v. AAA Michigan*, 646 N.W.2d 476, 480 (Mich. App. 2002). Personal protection benefits are deemed overdue if not paid within 30 days of receipt of this reasonable proof. MCL § 500.3142(2). If an insurer desires to challenge a claim, it can and should conduct an investigation during the thirty-day legislative period. *Williams*, *supra* at 485. The no-fault laws provide insurers with the ability to take discovery on claims submitted to determine the accuracy and reasonableness of the claims. MCL § 500.3159. An insurer may justify a refusal or delay in the payment of benefits by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty. *See Ross v. Auto Club Group*, 748 N.W.2d 552 (Mich. 2008).

Michigan's no-fault laws require the prompt resolution of any claim disputes. Typically, a claimant must file a lawsuit for personal protection benefits within one year of the date of the

14

accident causing the injury and the claimant may not recover benefits for any portion of the loss incurred more than one year before the date of commencement of the action. MCL § 500.3145(1). While insurers are not provided with any cause of action for insurance fraud claims, insurers are entitled to bring claims for recovery or indemnity, but must do so within one year after payment has been received by a claimant upon a tort claim. MCL § 500.3146.

The legislature also provided for penalties to encourage the prompt resolution of claim disputes. An overdue payment bears simple interest at the rate of 12% per annum. MCL § 500.3142(3). Further, attorney's fees are provided to a claimant when an insurer unreasonably refuses to pay a claim or unreasonably delays in making proper payment and attorney's fees are provided to an insurer when it must litigate "in **defense** against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation." MCL § 500.3148 (emphasis added). Notably, there is no similar provision for litigation brought by insurers relating to fraudulent claims, because such actions are not provided for within the no-fault regime.

Michigan courts have summarized the Michigan no-fault laws' balancing of relationships among insurers, policy holders and medical care providers as follows:

> The impermissible payment behavior of an insurer has an economic effect on the injured person, both directly and indirectly, usually in the form of damaged credit ratings, difficulties in securing health care services, harassment, and lawsuits initiated by health care providers for reimbursement. Permitting the imposition of [the no-fault] penalty provisions by health care providers provides a legitimate and enforceable incentive to no-fault insurers to perform their payment obligations, imposed by operation of law, in a reasonable and prompt manner. **Similarly, health care providers have incentive to submit reasonable payment claims because no-fault insurers are permitted to recover attorney fees for defending against a claim 'that was in some respect fraudulent or so excessive as to have no reasonable foundation.'**

*Lakeland Neurocare*, 645 N.W.2d at 64 (emphasis added).

In *Riverview Health,* the Sixth Circuit found the federal RICO statute reverse preempted by an Ohio insurance regulatory scheme that included prompt pay requirements and related penalties similar to the Michigan no-fault regulations. To determine if application of RICO would impair state insurance laws, the Sixth Circuit followed the Supreme Court's analysis in *Humana* and considered the following seven factors:

> (1) the availability of a private right of action under the state insurance scheme; (2) the availability of a state common law remedy; (3) the possibility that other state statutes provide the basis for suit; (4) the availability of punitive damages; (5) whether the damages available under the state insurance scheme could exceed the damages recoverable under RICO, even taking into account RICO's treble damages provision; (6) the absence of a position by the State regarding any interest in state policy or the administrative scheme; and (7) the fact that insurers have relied on RICO to eliminate insurance fraud.

*Riverview Health*, 601 F.3d at 517. Consideration of these factors demonstrates that the use of RICO as a sword against health care providers submitting claims for no-fault insurance benefits would conflict with Michigan's no-fault laws, frustrate declared Michigan policies, interfere with Michigan's administrative regime, and thus impair Michigan's no-fault laws.

As discussed above, Michigan's no-fault laws do not provide a private right of action for insurance fraud, and the fraud and unjust enrichment claims asserted by State Farm are not viable in light of the Michigan Legislature's enactment of comprehensive procedures governing payment of personal protection insurance claims. *Global Medical Billing*, Case No. 09-cv-14975, 2011 U.S. Dist. LEXIS 17448, *11-12 (February 23, 2011)(Ex 1); *Allstate v. Ruben*, Oakland County Circuit No. 02-0415888-NF, p. 9 (2003) (Ex 2)("Again, both are so comprehensively governed by a statutory scheme here that involves reasonableness and necessity that a court of equity cannot and should not be invoked at this juncture."); *cf. Riverview Health*, 601 F.3d at 517 ("The Ohio General Assembly has specified the remedies for violating the Prompt Pay Act and has therefore, preempted the field and a common law cause of action cannot be implied.")

16

The Michigan Legislature's decision to omit a private fraud cause of action from the no-fault laws while abrogating the common law relating to insurance claims for automobile related injuries is consistent with many other states. As the Sixth Circuit held in *Riverview Health*:

> Furthermore, several courts *post-Humana* have held that the McCarran-Ferguson Act bars the application of RICO where, as here, the state insurance scheme does not allow a private right of action for the conduct alleged by Plaintiffs. *See, e.g. . . . In re Managed Care Litig.*, 185 F.Supp.2d 1310, 1321-22 (S.D. Fla. 2002)(affirming dismissal of RICO claims filed by plaintiffs residing in California, Florida, New Jersey, and Virginia, because unlike the Nevada statute at issue in *Humana*, those states do not expressly provide a private cause of action for victims of insurance fraud.)(Additional supporting string citations omitted).

Furthermore, Plaintiff has not asserted any claims arising from state statutes and the Abu Farha defendants are not aware of any state statute outside of the Insurance Code that would apply to this case. Thus, no state statute counters a finding that application of the federal RICO statute in this case would impair Michigan's no-fault regulatory regime.

The treble damages available under the RICO statute would greatly exceed the administrative remedies available under Michigan law. A person who commits insurance fraud in Michigan may be ordered to pay restitution plus a fine of not more than $50,000. MCL § 500.4511. Assuming Plaintiff could prove the fraud alleged in this case and the existence of RICO violations, the treble damages available to State Farm would greatly exceed $50,000. Accordingly, permitting State Farm to recover treble damages under RICO would controvert Michigan's regulatory scheme. *Riverview Health*, 601 F.3d at 518.

The State of Michigan has not taken a position on this case, and this factor is neutral. The final factor, whether insurers have relied on RICO to combat insurance fraud, is also neutral. State Farm and other insurers have brought similar RICO claims in the past, some successfully and some unsuccessfully. As noted above, the court in *Global Medical* dismissed Allstate's RICO claims, and at the very least put insurers like State Farm on notice that it cannot rely on a

private right of action to combat insurance fraud. The Michigan Legislature has enacted laws that sufficiently deter and remedy fraud perpetrated against insurers without the need to resort to RICO. *See* MCL §§ 500.3148, 500.4501, et al.; *see also*, *Lakeland Neurocare*, 645 N.W.2d at 64 ("health care providers have incentive to submit reasonable payment claims because no-fault insurers are permitted to recover attorney fees for defending against a claim 'that was in some respect fraudulent or so excessive as to have no reasonable foundation.'")

As discussed above, when  enacting the Michigan No-Fault Act, the Michigan Legislature wisely recognized that private insurers, responsible for paying claims necessary for the no-fault system to properly function, have a financial incentive to discourage providers from submitting claims. Private prosecution by insurers, like State Farm's unwarranted effort in this case, could disrupt the ability of Michigan citizens injured in automobile accidents to receive appropriate care, increase the amount of litigation relating to automobile accidents, and therefore impair the Michigan no-fault regime. For these reasons, the Michigan Legislature delegated insurance fraud claims to specifically authorized agencies. MCL § 500.4501.

There is a direct conflict between the intent of Michigan's no-fault regime and the intent of the federal RICO statute. By implementing the no-fault regime, Michigan's Legislature intended to reduce civil litigation. On the other hand, the objective of RICO is to create "private-attorneys general" in furtherance of civil litigation. *See Rotella v. Wood*, 528 U.S. 549, 547 (2000)(noting that the objective of RICO is to encourage "civil litigation to supplement Government efforts to deter and penalize the prospectively prohibited practices.") Since there is a direct conflict between these two objectives, and application of RICO conflicts with the prompt claim resolution objectives noted above, application of RICO would clearly impair Michigan's no-fault regime. Thus, RICO is reverse preempted pursuant to McCarran-Ferguson.

18

**D.     Plaintiff fails to plead facts sufficient to support a RICO or Fraud action.**

**1.     Pleading standards applicable to RICO and Fraud actions.**

Facts sufficient to satisfy each element of a RICO claim must be pled. *Sedima SPRL v. Imrex. Co.*, 473 US 479 (1985). The plaintiff in a RICO action premised upon the predicate act of mail fraud must plead the predicate acts of mail fraud with the particularity required by Fed. R. Civ. P. 9(b). *DeLorean v. Cork Gully*, 118 B.R. 932, 940 (E.D. Mich. 1990). "Rule 9(b) is especially important in a RICO case where a defendant is charged with fraudulent conduct based on criminal activity, and threatened with treble liability." *DeLorean*, 118 B.R. at 940 (citations omitted). RICO plaintiffs "must allege facts that give rise to a strong inference of fraudulent intent." *First Capital Asset Mgt. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2nd Cir. 2004).

The complaint must provide "detailed information" demonstrating how each defendant, in particular, committed the predicate acts. *Federal Ins. Co. v. Webne*, 513 F.Supp.2d 921, 926 (N.D. Ohio 2007). To comply with the strict requirement of Fed. R. Civ. P. 9(b), that allegations of fraud must be pled with particularity, the RICO complaint must (1) specify, with particularity, the actual statements that the plaintiff contends were fraudulent; (2) state who made the fraudulent statement; (3) state where, and when the statements were made; and (4) explain why the statements were fraudulent. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2nd Cir. 1994); *see also Vild v. Visconsi*, 956 F.2d 560, 567 (6th Cir. 1992). The conclusory allegation that a defendant acted fraudulently is insufficient. *Twombly,* 550 U.S. at 557.

The plaintiff must specifically differentiate what each defendant allegedly did, and cannot lump two or more defendants together in it allegations. *Paycom Billing Services, Inc. v. Payment Resources Int'l*, 212 F.Supp.2d 732, 737-738 (W.D. Mich. 2002). When a plaintiff lumps

defendants together, it violates the particularity requirement and thus fails to state a claim upon which relief can be granted, thereby requiring dismissal under *Fed. R. Civ. P. 12(b)(6)*. *Id.*

To plead a viable RICO claim, State Farm must identify facts sufficient to plausibly establish: (1) the existence of a RICO "enterprise;" (2) that the Abu Farha defendants were each employed or associated with the enterprise; (3) that the enterprise was engaged in or affecting interstate commerce; (4) that the Abu Farha defendants each participated in the conduct of the enterprise's affairs; (5) through a pattern; (6) of racketeering activity; and (7) that predicate acts alleged to have been committed specifically by the Abu Farha defendants proximately caused the injuries alleged. *Sedima SPRL*, 473 U.S. at 496.

There are six prima facie elements to a common law fraud claim in Michigan:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Temborius v. Slatkin*, 403 N.W.2d 821, 826 (Mich. Ct. App. 1986). Each of these elements must be pled with particularity. *Fed. R. Civ. P. 9(b)*

### 2. State Farm fails to allege facts sufficient to support the plausible existence of a RICO enterprise.

The existence of a RICO "enterprise" requires an "ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchal or consensual decision-making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990). "The central element of an enterprise is structure. An enterprise must be more than a group of people who get together to commit a 'pattern of racketeering activity.'" *Richmond v. Nationwide Cassel, L.P.,* 52 F.3d 640, 645 (7th Cir. 1995)(citations omitted). "There must be 'a structure and goals separate from the predicate acts themselves.'" *Id.* (citations omitted). "As a matter of law, it is

20

not sufficient that several organized, ongoing groups come together for one concerted action, unless those groups can also be shown to constitute a larger unit, over and above their separate structures and operations . . . " *Libertad v. Welch*, 53 F.3d 428, 442 (1st Cir. 1995).

State Farm fails to allege any hierarchical structure or structure amenable to consensual decision-making among the alleged participants. At most, State Farm alleges that the Abu Farha defendants bill State Farm for services related to patients that Dr. Abu Farha has diagnosed, allegedly incorrectly, with ailments requiring physical therapy. State Farm does not allege that the Abu Farha defendants direct the patients to Physiomatrix or Genex, and they do not. Furthermore, it is up to the patients to pursue the physical therapy recommended. The Abu Farha defendants have no control over the patients. State Farm does not allege that Dr. Abu Farha's patients play any role in the alleged enterprise. Moreover, when the patients attend physical therapy, the Abu Farha defendants have no control over the physical therapy provided or bills submitted to State Farm for such physical therapy. Therefore, Plaintiff's attempt to allege the existence of a plausible RICO enterprise fails as a matter of law.

3.     **State Farm fails to allege facts sufficient to plausibly establish that the Abu Farha defendants participated in the conduct of the alleged RICO enterprise.**

To properly plead a RICO cause of action, State Farm must allege facts sufficient to plausibly establish that the Abu Farha defendants "participated" in the conduct of the alleged RICO enterprise by directing the enterprise's overall affairs. *Reeves v. Ernst & Young*, 507 U.S. 170 (1993). The term "participate" pertains to the conducting of the enterprise and not merely alleged participation in the predicate acts. RICO "liability depends on showing that the defendants conducted or participated in the '*enterprise's* affairs,' not just their *own* affairs." *Reeves*, at 185 (emphasis in original). In other words, State Farm must plead facts sufficient to

21

plausibly establish that the Abu Farha defendants were involved in the "operation and management" of the enterprise. *Id.* The complaint must "allege a specific nexus between control of any enterprise and the alleged racketeering activity[.]" *Advocacy Org. for Patients and Providers v. ACIA*, 176 F.3d 315, 328 (6th Cir. 1999). "Under *Reeves*, not even action involving some degree of decision-making constitutes participation in the affairs of an enterprise." *Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1538-39 (3rd Cir. 1993).

State Farm does not allege the Abu Farha defendants participated in the operation or management of an enterprise. At most, State Farm alleges they participated in their own affairs by submitting bills related to medical evaluations of persons who were prescribed physical therapy that was allegedly excessive. State Farm's RICO allegations fail as a matter of law.

### 4. State Farm fails to allege facts sufficient to plausibly establish fraud, mail fraud, or any racketeering activity.

Mail fraud is the only predicate act of "racketeering activity" that State Farm alleges to have been committed by the Abu Farha defendants. The elements of mail fraud pursuant to 18 USC § 1341 are (1) devising or intending to devise a scheme to defraud; and (2) the use, or causing the use of the United States mails for the purpose of executing or attempting to execute the scheme. *Schmuck v. United States*, 489 U.S. 705 (1989). "Courts have been particularly sensitive to *Fed. R. Civ. P. 9(b)'s* pleading requirements in RICO cases in which the 'predicate acts' are mail and wire fraud[.]" *Gotham Print, Inc. v. American Speedy Printing*, 863 F.Supp. 447, 458 (E.D.Mich. 1994).

A plaintiff alleging fraud or mail fraud "must allege, as to each defendant, '…the precise statements, documents, or misrepresentations made[.]'" *Kivisto*, 413 Fed. Appx. at 139 (citation omitted). State Farm's complaint does not specify what statements were fraudulent or how it claims any specific statements were fraudulent. State Farm alleges that Dr. Abu Farha overly

22

prescribed physical therapy and overly diagnosed disabilities, but does not specify for which patients or to what degree. State Farm merely lumps together a chart of every patient of Dr. Abu Farha's that ever attended physical therapy at Physiomatrix or Genex.

Further, the only alleged evidence of fraud submitted in State Farms' factual allegations, stem from the documents that were submitted to State Farm and which State Farm reviewed and determined to establish reasonable claims for benefits that it was required to pay. In Michigan, "[t]he rule is well settled that, where money has been voluntarily paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying." *Progressive Mich. Ins. Co. v. United Wis. Life Ins. Co.*, 84 F.Supp. 2d 848, 854 (E.D. Mich. 2000). At the time it paid the claims at issue, State Farm was fully aware of all facts that it now alleges are evidence of fraud. State Farm cannot establish detrimental reliance.

State Farm's allegations of fraud and mail fraud fail to rise to the level of plausibility required by *Twombly*. It is implausible that Dr. Abu Farha overprescribed physical therapy for every patient of his who ever received physical therapy from Physiomatrix or Genex, and that each evaluation and re-evaluation was fraudulent, and that each patient simply went along with the physical therapy even though they were not suffering from any injury or disability, as State Farm apparently alleges. *Rule 9(b)* requires State Farm to be more specific in its allegations.

Since State Farm has failed to plead mail fraud under RICO, it has necessarily failed to plead a "pattern" of such fraud/racketeering, rendering the RICO claim defective on its face. *Sedima SPRL*, 473 U.S. at 496. Thus, State Farm has failed to plead a common law claim of fraud and has failed to plead mail fraud. Count I, II, and III must be dismissed. *Craighead v. E.F.*

23

*Hutton & Co., Inc.*, 899 F.2d 485, 495 (6th Cir. 1990) ("[The] conspiracy claim cannot stand in light of the dismissal of their other RICO counts.")

**E.      Plaintiff has failed to plead facts sufficient to support a claim of unjust enrichment.**

Michigan law requires that the doctrine of unjust enrichment be applied "with caution." *Kammer Asphalt Paving v. East China Twp. Schools*, 443 Mich. 176, 185-186 (1993). An unjust enrichment claim is an equitable claim, and a contract will be implied in appropriate cases to prevent unjust enrichment. *Liggett Rest. Grp. v. City of Pontiac*, 260 Mich App 127, 137-138 (2003). "A contract will be implied only where no express contract exists. There cannot be an express and implied contract covering the same subject matter at the same time." *Campbell v. Troy*, 42 Mich. App. 534, 537 (1972). In this case, each claim was paid by State Farm in accordance with the insurance policy contract governing the relationship with each insured beneficiary. *Park v. American Cas. Ins. Co.*, 219 Mich. App. 62, 69; 555 N.W.2d. 720 (1996) ("A purpose of the no-fault act is to provide a contractual right of action against one's own insurer for wage-loss and medical expenses arising from a motor vehicle accident.")

Medical providers such as the Abu Farha defendants are standing in the shoes of the insured when submitting claims to State Farm for the benefit of the insured. *See Lakeland Neurocare*, 645 N.W.2d. at 63. For instance, if the Abu Farha defendants provide health care services to a State Farm insured who failed to pay his auto insurance premiums, State Farm would inform the Abu Farha defendants that the policy was canceled due to non-payment and will refuse to pay the health insurance claim. But for the applicable insurance contracts, State Farm would not pay the claims submitted by the Abu Farha defendants. Since an express contract governs each insurance claim at issue, State Farm's unjust enrichment claim cannot stand and must be dismissed.

## CONCLUSION

For the reasons set forth above, all of State Farm's claims against the Abu Farha defendants should be dismissed with prejudice.

Respectfully submitted,

MANTESE HONIGMAN ROSSMAN
   and WILLIAMSON, P.C.
Attorneys for the Abu Farha defendants only


   /s/Brendan H. Frey
Gerard V. Mantese (P34424)
Brendan H. Frey (P70893)
1361 E. Big Beaver Rd.
Troy, Michigan 48083
248-457-9200
248-457-9201 (fax)
gmantese@manteselaw.com
bfrey@manteselaw.com

Dated: May 21, 2012


## CERTIFICATE OF SERVICE

I, Brendan Frey, hereby certify that on May 21, 2012 I caused the foregoing Motion to Dismiss to be filed through the Court's ECF filing system, which shall provide service to all counsel of record.

   /s/Brendan H. Frey
      Brendan H. Frey

Dated: May 21, 2012