## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-11500 |
| | ) | |
| Physiomatrix, Inc., | ) | Hon. John C. O'Meara |
| Genex Physical Therapy, Inc., | ) | |
| Kallil I. Kazan, D.C., | ) | Magistrate Judge David R. Grand |
| Naim Khanafer, D.C., | ) | |
| Sami Abu Farha, M.D., | ) | |
| Sami Abu Farha, M.D., P.C., | ) | |
| Tete Oniang'o, M.D., | ) | |
| Tete Oniang'o, M.D., P.L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF AND COUNTER-DEFENDANT STATE FARM'S
### MOTION TO DISMISS PHYSIOMATRIX'S AND GENEX'S COUNTERCLAIMS

NOW COMES State Farm, by and through their counsel, to move this Honorable Court to dismiss the claims against them, in whole or in part, pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, for the reasons set forth in the attached Brief, which include, but are not limited to Physiomatrix's and Genex's lack of standing to bring all or part of the claims set forth in the Counter-Complaint; failure to plead allegations sufficient to state a claim; and failure to plead fraud with particularity.

Counsel for State Farm contacted opposing counsel and sought, but did not obtain, concurrence in the relief sought.

WHEREFORE, Counter-Defendant State Farm respectfully requests that this Court dismiss the Clinics' Counterclaims against it.

Dated:  July 16, 2012

Respectfully submitted,

By:    <u>/s/ Eric T. Gortner          </u>
        One of the Attorneys for State Farm
        Mutual Automobile Insurance Company

Morley Witus (P30895)
BARRIS, SOTT, DENN & DRIKER PLLC
211 West Fort St., 15th Floor
Detroit, MI  48226-3281
(313) 596-9308
mwitus@bsdd.com

Ross O. Silverman
Kathy P. Josephson
Eric T. Gortner
Patrick C. Harrigan
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661-3693
312.902.5200
ross.silverman@kattenlaw.com
eric.gortner@kattenlaw.com
kathy.josephson@kattenlaw.com
patrick.harrigan@kattenlaw.com

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

State Farm Mutual Automobile Insurance Company, )
)
                                    Plaintiff,   )
)
                v.                               )   Case No. 12-cv-11500
)
Physiomatrix, Inc.,                              )   Hon. John C. O'Meara
Genex Physical Therapy, Inc.,                    )
Kallil I. Kazan, D.C.,                           )   Magistrate Judge David R. Grand
Naim Khanafer, D.C.,                             )
Sami Abu Farha, M.D.,                            )
Sami Abu Farha, M.D., P.C.,                      )
Tete Oniang'o, M.D.,                             )
Tete Oniang'o, M.D., P.L.L.C.,                   )
)
                                  Defendants.    )

## PLAINTIFF AND COUNTER-DEFENDANT STATE FARM'S BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS THE CLINICS' COUNTERCLAIMS

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") submits the

following Brief in Support of Its Motion to Dismiss The Clinics' Counterclaims Pursuant to

Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure ("Motion").

## STATEMENT OF ISSUES PRESENTED

I.      Have the Clinics failed to state a claim of racial discrimination under 42 U.S.C. §§ 1983, 1985(3), and 1986 in Counts I through VI?

     Counter-Plaintiffs' answer:    No
     Counter-Defendants' answer: Yes

II.     Have the Clinics failed to state a claim of racial discrimination under Michigan's Elliot-Larsen Civil Rights Act in Count VIII?

     Counter-Plaintiffs' answer:    No
     Counter-Defendants' answer: Yes

III.    Have the Clinics failed to state a claim under federal RICO in Count VII?

     Counter-Plaintiffs' answer:    No
     Counter-Defendants' answer: Yes

IV.     Have the Clinics failed to state a claim of tortious interference with a contract/professional relationship in Count IX?

     Counter-Plaintiffs' answer:    No
     Counter-Defendants' answer: Yes

V.      Have the Clinics failed to state a claim under Michigan's Uniform Trade Practice Act or a state of claim for any relief in Count X?

     Counter-Plaintiffs' answer:    No
     Counter-Defendants' answer: Yes

VI.     Have the Clinics failed to state a claim for inapplicability of government immunity in Count XI?

     Counter-Plaintiffs' answer:    No
     Counter-Defendants' answer: Yes

## CONTROLLING AUTHORITIES

Federal Rule of Civil Procedure 8(a)

Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 12(b)(6)

The Eleventh Amendment to the United States Constitution

*Am. Mfrs. Mut. Ins. Co, et al v. Sullivan,* 526 U.S. 40 (1999)

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*Black v. Pension Ben. Guar. Corp.,* 2011 WL 3875055 (E.D. Mich. Sept. 2, 2011)

*Collyer v. Darling,* 98 F.3d 211 (6th Cir. 1996)

*Davis v. City of Dearborn,* 2010 WL 5282015 (E.D. Mich. Dec. 17, 2010)

*Downing v. Life Time Fitness, Inc.,* 2011 WL 2014771 (E.D. Mich. May 24, 2011)

*First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763 (2d Cir. 1994)

*Kingsway General Ins. Co. v. Austin,* 2008 WL 5188263 (E.D. Mich. Dec. 8, 2008)

*U.S. ex rel. McNulty v. Reddy Ice Holdings, Inc.,* 835 F. Supp. 2d 341 (E.D. Mich. 2011)

TABLE OF CONTENTS

I.    INTRODUCTION.......................................................................................... 1

II.   STATEMENT OF FACTS.............................................................................. 2

III.  LEGAL STANDARDS .................................................................................. 3

IV.   ARGUMENT ................................................................................................. 3

          A.    The Clinics' Federal Civil Rights Causes of Actions All Fail ............................3

                 1.    The Federal Civil Rights Counts Fail Because The Allegations Do
                       Not Plead Any Viable Claim of Racial Discrimination ........................ 4

                 2.    The Claims Under Section 1983 and Count XI Also Fail Because
                       State Farm Is Not A State Actor........................................................ 7

                 3.    The Claims Under Sections 1985 and 1986 Also Fail Because They
                       Do Not Plead A Conspiracy .................................................. 11

          B.    The Clinics Do Not Plead A Viable Claim Under The ELCRA .....................11

          C.    The Clinics Do Not Plead A Viable RICO Claim...........................................12

                 1.    The Clinics Have Not Pled A Scheme To Defraud.............................. 13

                 2.    The Clinics Fail to Allege The Existence of a Distinct Enterprise...... 16

                 3.    The Clinics Do Not Plead A Viable RICO Enterprise........................ 17

                 4.    The Counterclaims Fail to Allege Proximate Cause Under RICO..... 17

          D.    The Clinics' Tortious Interference Count Does Not State a Claim................19

          E.    The Clinics Cannot State A Claim Under The MUTPA ..................................20

V.    CONCLUSION ............................................................................................. 20

## I.      INTRODUCTION

Physiomatrix's and Genex's (the "Clinics") Counterclaims should be dismissed in their entirety because they fail to state any viable claims.  Rather, in response to State Farm's well-pleaded Complaint, the Clinics assert scattershot and frivolous allegations, none of which are supported by *any* factual allegations to meet Rule 8, much less Rule 9(b), pleading standards.  In Counts I through VI, the Clinics attempt to plead violations of various Federal Civil Rights statutes based solely on the wholly conclusory allegation that State Farm – after years of paying these *same* Clinics hundreds of thousands of dollars – stopped paying the Clinics' bills in 2011 because of sudden and unexplained racial animus toward providers of "Arabic descent."  These Counts, as well as the similar Count VIII under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), should be dismissed because there is no factual support in the Counterclaims – nor could there be – to allow this Court to make the determination that the Clinics' theory of racial discrimination is plausible.  It plainly is not.  The other Section 1983 claims in Counts I, II, VI, V, and VI all fail for the separate reason that State Farm is not a state actor, and thus cannot be exposed to any Section 1983 liability.  For this same reason, Count XI's request for a declaration that State Farm is not subject to government immunity is nonsensical, and should be dismissed.

The Clinics' RICO Count VII fails because the Clinics do not plead a predicate mail fraud act, a viable RICO enterprise, or any cognizable injury.  Count IX's attempt to plead a claim for tortious interference of contractual or business relationships fails to plead the existence of any contract, or any facts to establish interference with any business relationships.  Finally, Count X impermissibly seeks relief based on the Michigan Uniform Trade Practices Act (MUTPA) – but the MUTPA does not provide a private cause of action.  Moreover, the relief asserted under Count X illustrates the wildly over-reaching nature of these Counterclaims, in which the Clinics ask this Court to enjoin both the Michigan Secretary of State and the

Commissioner of Insurance, in violation of the Eleventh Amendment.  These Counterclaims reside on nothing more than thin air, rather than the required facts, and they should be dismissed.

## II.    STATEMENT OF FACTS

State Farm's Complaint alleges that the Clinics are central players in a five-year scheme to defraud State Farm out of nearly two million dollars by submitting claims for medically unnecessary physical therapy services.  [Doc. 1, ¶¶ 2, 9-10.]  The Complaint contains precise facts showing the Clinics' fraudulent predetermined treatment protocols in which virtually every patient obtains the same unnecessary treatment, regardless of symptoms.  [*Id.*, ¶¶ 2-3, 6-9.]

In response to the Complaint, the Clinics now allege that State Farm, two of its employee adjusters, Michael Flannery and Nicole Lefere (the "State Farm Employees," and collectively, "the State Farm Defendants") and "others not yet identified," created a scheme in 2011 to deny the Clinics' bills, purportedly based on the alleged Arabic descent of its providers (the "Counterclaims"). [Doc. 18, ¶¶ 1, 6.]  The Clinics claim that after State Farm "lost" purported lobbying attempts to modify the No-Fault Act to lower payments, it began a "scheme" to deny claims submitted not just by the Clinics, but allegedly by *all* providers of Arabic descent. Tellingly, the Clinics do not identify any other provider allegedly affected by this "scheme."[1] [*Id.,* ¶¶ 2-6, 8, 44-45.]

The Clinics also name the Michigan Secretary of State and Commissioner of Insurance as counter-defendants.  The Clinics assert eleven causes of action, which generally fall under (1) several Federal Civil Rights statutes codified under Sections 1983, 1985 and 1986 (Counts I-VI), (2) federal RICO (Count VII), (3) Elliott-Larsen Civil Rights Act (ELCRA) (Count VIII), (4)

---

[1]  The Clinics also include cursory allegations of discrimination related to "other racial minority" backgrounds, but do not specify any background other than "Arabic descent." [Doc. 18, ¶¶ 6, 8.]

tortious interference with contractual/business relationship (Count IX), (5) declaratory relief related to the MUTPA (Count X), and (6) avoidance of government immunity (Count XI).

## III.   LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, a counterclaim "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *U.S. ex rel. McNulty v. Reddy Ice Holdings, Inc.*, 835 F. Supp. 2d 341, 347 (E.D. Mich. 2011) (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. A court must draw on "judicial experience and common sense" to determine whether the complaint has stated enough specific facts to infer a plausible, rather than merely possible, claim for relief. *Id.*

## IV.   ARGUMENT

### A.   The Clinics' Federal Civil Rights Causes of Actions All Fail

In Counts I through VI, the Clinics attempt to raise causes of action under several Federal Civil Rights statutes, namely 42 U.S.C. §§ 1983, 1985(3), and 1986,[2] based solely on State Farm's alleged "scheme" to deny payment of claims from healthcare providers of Arabic descent. [Doc. 18, ¶ 6.]   Under Section 1983, a plaintiff must allege two elements: (1) a deprivation of a right secured by the Constitution or federal statute, and (2) the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co, et al v. Sullivan*, 526 U.S. 40, 49-50 (1999).   To plead a claim under Section 1985(3), a claimant must allege a conspiracy created for the purpose of depriving a person the equal protection of the laws and acts

---

[2]   Counts I and II seek relief under both Sections 1983 and 1985, Count III seeks relief under Section 1986, and Counts IV through VI plead damages or attorney's fees related to these three Sections.

that deprived a person of a right or privilege. *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). Finally, Section 1986 extends liability to those who aid and abet Section 1985 violations, and therefore liability under Section 1986 is predicated on initial Section 1985 liability. *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980). As explained below, the allegations in Counts I through VI fail to state a claim under any of the Federal Civil Rights statutes.

### 1. The Federal Civil Rights Counts Fail Because The Allegations Do Not Plead Any Viable Claim of Racial Discrimination

Counts I through VI under the Federal Civil Rights statutes all depend on alleged violations of Equal Protection rights, namely racial discrimination.[3] [Doc. 18, ¶¶ 62-87.] "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). At a minimum, a plaintiff contending that he was discriminated on the basis of race must plead that he was treated "disparately as compared to similarly situated persons" of a different race. *See Black v. Pension Ben. Guar. Corp.*, 2011 WL 3875055, at *5 (E.D. Mich. Sept. 2, 2011).

These Counts all fail because the Clinics do not plead any facts to establish the elements of Sections 1983, 1985, or 1986 violations, much less sufficient facts to allow this Court to determine that their claims of racial discrimination are plausible. *See Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). *Iqbal* dictates that the Clinics cannot hide behind conclusory allegations masquerading as "facts," or simply parrot the elements of a cause of action. *Id.* Moreover, the Court has an obligation to use common sense

---

[3] The Clinics also merely recite the standard of procedural and substantive due process, but provide no factual allegations to sustain any claims that they were denied adequate procedural measures or any substantive due process right. [Doc. 18, ¶ 65.] *Cf. Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010); *Sutton v. Cleveland Bd. of Ed.,* 958 F.2d 1339, 1350 (6th Cir. 1992).

and its judicial experience to determine whether the claims are plausible, or whether competing explanations are equally, if not more, plausible. *Id*. at 679.

Here, the Clinics' Counterclaims are the quintessential bare, unsupported allegations that *Twombly* and *Iqbal* dictate should be dismissed. As an initial matter, the Clinics do not even specifically allege that *their* healthcare providers were of Arabic descent. This alone is fatal to their claim. *See Smith v. Jefferson County Bd. of School Com'rs,* 641 F.3d 197, 208 (6th Cir. 2011) (detailing limited circumstances when party can invoke third-party standing). Nor do they plead any facts about other non-Arabic providers who were treated more favorably by State Farm. *See Black*, 2011 WL 3875055, at *5-6; *see also Davis v. City of Dearborn*, 2010 WL 5282015 at *7-8 (E.D. Mich. Dec. 17, 2010). Thus, the Clinics' civil rights claims fail.

Setting aside these fundamental pleading deficiencies, the Clinics' racial discrimination allegations rely solely on conclusions, not facts. Other than the bare conclusion that in 2011 State Farm began to deny the Clinics' claims, there are no facts to allow this Court to conclude that their discriminatory theory is plausible. [*cf.* Doc. 18, ¶¶ 6, 8.] The Clinics do not allege that the State Farm Defendants knew that providers were of Arabic descent, much less facts supporting a "broad scheme" against all providers of Arabic descent. To the contrary, the "four factors" that the Clinics allege to "demonstrate" the scheme's existence are all unsupported conclusions, not cognizable factual allegations. [Doc 18, ¶ 8.] The "first factor," namely, that State Farm "instituted this scheme" after failed legislative and legal efforts, is entirely conclusory – there are no facts pled to suggest that State Farm engaged in this type of concerted lobbying effort, nor, more significantly, that these efforts had *anything* to do with Arabic providers. [*Id.*] Similarly, the Clinics' "second factor," namely that the providers subjected to the "scheme" are "virtually all of Arabic or other racial minority backgrounds" is also conclusory because they do

not plead a single example of such providers.  Nor do they allege a provider who was not of Arabic descent who was treated more favorably by State Farm.  It is axiomatic that "[t]o state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis."  *Center for Bio-Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 379 (6th Cir. 2011).  "An Equal Protection claim cannot be sustained with allegations "as to disparate treatment [that] amount to conclusory and unadorned assertions."  *Id*.  The Clinics' "third factor," namely that State Farm has, at times, settled or lost cases where it denied bills, has nothing to do with race or disparate treatment. [Doc 18, ¶ 8.]  And, finally, the "fourth factor," namely that State Farm's settlements may prohibit unspecified providers from submitting future bills, is based solely on "information and belief," and provides no plausible inference on discrimination because it is silent on whether State Farm agrees to identical settlement terms with non-Arabic providers (which it does).  *Id.*

In filing Counterclaims with such barren allegations, the Clinics are asking this Court to set aside its "judicial experience and common sense," and ignore the "more likely explanation" that State Farm began denying some of the Clinics' claims in 2011 because of its discovery of the Clinics' fraud, which led to this very litigation – not because of unexplained racial animus. *Cf. Iqbal*, 556 U.S. at 679, 681-82 (considering "more likely explanations" for racial discrimination allegations).  The Clinics' allegations contain no facts to rebut this more likely explanation.  For example, the Clinics ignore the crucial fact that State Farm paid these *same* Clinics hundreds of thousands of dollars over the course of years, which renders their bald assertion of sudden racial animus not only implausible, but also nonsensical.  *Cf.* [Doc. 1, 96-98; Doc. 18, ¶ 6.]  Indeed, the Clinics do not even attempt to address this inconsistency, such as

alleging that State Farm first learned in 2011 that the Clinics employed providers of Arabic descent, or by pleading facts to explain *why* State Farm would pay hundreds of thousands of dollars to the Clinics without any alleged change in its knowledge of the providers' racial backgrounds in the 2011-and-onward time period.  *Cf. Iqbal*, 556 U.S. at 679-82.  Thus, the Clinics' allegations are consistent with the "more likely explanation" – which the Court must consider under *Iqbal* – that State Farm's denials beginning in 2011 were for reasons *other* than racial discrimination, namely its discovery of the Clinics' fraud scheme, which culminated in this case being filed.  *Id.*

The Clinics' threadbare allegations of racial discrimination are "precisely the type of 'defendant-unlawfully-harmed-me accusation'" that Courts in this District routinely dismiss. *Davis,* 2010 WL 5282015 at *7 – *8; *Flentall v. Morey*, 2011 WL 6090156, at *11 ( (E.D. Mich. Aug. 25, 2011).  Accordingly, Counts I through VI should be dismissed.

>    **2.    The Claims Under Section 1983 and Count XI Also Fail Because State Farm Is Not A State Actor**

The Section 1983 claims in Counts I, II, IV, V and VI, and Count XI's request for a declaration regarding government immunity should all be dismissed for the separate reason that the State Farm Defendants are not state actors.  Under Section 1983, a plaintiff must allege two elements: (1) a deprivation of a right secured by the Constitution or federal statute, and (2) that the alleged deprivation was committed under color of state law.  *Am. Mfrs. Mut. Ins. Co , et al v. Sullivan*, 526 U.S. 40, 49-50 (1999).  To hold a private insurer liable, the alleged conduct being challenged must be "fairly attributable to the State."  *Id*. at 50.

Here, the Clinics' allegations fail because they do not – and cannot – plead sufficient facts to establish that State Farm's alleged discriminatory conduct was "attributable to the State." Specifically, the Clinics allege that State Farm administered an unspecified number of claims

assigned to it pursuant to the Assigned Claims Facility ("ACF"), which they contend is enough to convert State Farm into a "quasi-governmental role[] therefore subjecting them to liability under the federal Civil Rights Statutes."  [Doc. 18, ¶ 64.]  As explained next, this bare assertion is contradicted by the ACF statutory scheme and the controlling law.

The ACF was created by the Michigan legislature as a statutory mechanism through which individuals injured in motor vehicle accidents who either have no personal injury protection insurance, or whose coverage is either not applicable or ascertainable, are able to obtain No-Fault Benefits.  M.C.L. §§ 500.3171, 500.3172.  Although the Secretary of State is charged with organizing and maintaining the ACF, the ACF itself is not a publicly funded entity.  *Id*. at 500.3171.  Rather, it is maintained through an assessment on private insurers.  *Id.*  Upon submission by claimants, the ACF screens claims for basic requirements and assigns them to one of nine private insurers for complete investigation.  Once the ACF assigns the claim to a private insurer, like State Farm, the assigned insurer evaluates, administers and determines whether payment is appropriate in accordance with its own procedures and policies pursuant to the No Fault Act.  *Id*. at 500.3174, 500.3175.  Nothing in the statutory provisions governing the ACF dictate how a private insurer like State Farm must adjudicate a claim or indeed whether it must pay a claim.  *See id.*  Rather, private insurers are free to process ACF claims in the exact same way they process non-ACF claims.  *Id.*  Although a private insurer may seek reimbursement from the ACF for claims it paid, such reimbursement is not publicly funded.  *Id.* § 500.3171.

The United States Supreme Court has soundly rejected the Clinics' allegations that a private insurer is converted into a state actor under circumstances like these.  In *American Manufacturers,* the Court confronted the question of "whether a *private insurer's* decision to withhold payment for disputed medical treatment may be fairly attributable to the State" under

Pennsylvania's heavily regulated Worker's Compensation insurance program.  *Am. Mfrs*. 526 U.S. 40, 51 (1999).  Unlike the limited number of ACF claims here, *every* claim at issue in *American Manufacturers* was subject to the Worker's Compensation program, which required all private insurers contesting a claim to request review through the Worker's Compensation Bureau.  *Id.*  And, like here, key provisions of the Worker's Compensation Fund were "financed entirely through assessments on insurers."  *Id*. at 44-46, 56 n.11.

The Court rejected the argument that a private insurer becomes a state actor simply because it operates in a heavily state-regulated market.[4]  *Am. Mfrs., 526 U.S. at 52; see also Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000).  In doing so, the Court emphasized that when a state requires a private insurer to furnish heavily state-regulated services that provide public benefits, that provision of services does not convert the insurer into a state actor.  *Am. Mfrs.,* 526 U.S. at 55-58 (noting that the provision of insurance is not a traditional public function).  *Id*. at 55-57; *Chapman v. Higbee Co.*, 319 F.3d 825, 833-34 (6th Cir. 2003).

Instead, the relevant inquiry is whether there is a sufficiently "close nexus" between the challenged actions of the private entity and the state, such that the challenged action is tantamount to state action.  *Am. Mfrs.,* 526 U.S. at 52.  This nexus exists only if "there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself" or the state "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the State."  *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992); *see also Wilcher v. City of Akron*, 498 F.3d 516, 519-20 (6th Cir. 2007).  Thus, the Court in *American Manufacturers* held that the private insurers' action in withholding

---

[4]   Thus, the Clinics' bald allegation that State Farm is converted into a state actor simply by "providing insurance coverage that is required under Michigan law" can be easily dispatched.  [Doc. 18, ¶ 9.]

Worker's Compensation payments and subjecting claims to review under the state-created Compensation Bureau was not state action because, among other reasons, the state did not compel, and was not directly involved in, the private insurers' own decision on whether to withhold payment or invoke utilization review. *Am. Mfrs.*, 526 U.S at 52-55, 57-58.

*American Manufacturers* is directly on point and controls here. The Clinics' primary basis for liability is the assignment of an unspecified number of ACF claims to State Farm. [Doc. 18, ¶¶ 9, 64.] But their allegations do not demonstrate anything approximating the type of "close nexus" necessary to make State Farm's actions attributable to the State of Michigan. Specifically, the Clinics do not –and cannot – plead that the ACF had *any* involvement in the adjudication of these claims by State Farm, much less that the ACF compelled the specific challenged action here, namely, the denial of claims for alleged racial discrimination. *Cf.* [Doc. 18, ¶¶ 9, 30-43, 64.] Nor can they point to any ACF statutory provisions that compel State Farm to adjudicate the ACF claims differently than non-ACF claims. Instead, the ACF's role in claims handling is limited to assigning claims to private insurers, who then implement their own claims handling processes. Nor can the Clinics claim that the ACF payments are made from the state treasury. Moreover, the Clinics do not even limit their Counterclaims solely to ACF claims, but instead seek to impose liability for *all* denied claims – both ACF and non-ACF claims. There is no basis for this extraordinary expansion of Section 1983 law. *Am. Mfrs.*, 526 U.S. at 52.

The Court should also dismiss Count XI's request for a declaration regarding State Farm's government immunity. Because State Farm is not a state actor, Count XI is moot.[5] [Doc.

---

[5] Even if State Farm were deemed a state actor, the Clinics' attempt to draw a line between private and public insurance carriers [Doc. 18, ¶171], has been rejected by the Supreme Court. *See Filarksy v. Delia,* 132 S.Ct. 1657, 1660, 1666-68 (2012).

18, ¶ 171.]  Since there are no allegations in the Counterclaims that remotely suggest that State

Farm could be deemed a state actor, Counts I, II, IV, V, VI, and XI should be dismissed.

### 3.   The Claims Under Sections 1985 and 1986 Also Fail Because They Do Not Plead A Conspiracy

Counts II, III, IV, and V also allege claims under Sections 1985(3) and 1986, alleging that

the State Farm Defendants engaged in an unlawful discriminatory conspiracy.  [Doc. 18, ¶¶ 69-

85.]  These Counts fail for the additional reason that the Clinics do not allege the elements of

conspiracy.  Under Section 1985(3), a claimant must allege, among other things, "a conspiracy"

to deprive a person of equal protection rights.  *Collyer*, 98 F.3d at 233.  However, under the

intracorporate conspiracy doctrine, "where all of the defendants are members of the same

collective entity, there are not two separate people to form a conspiracy.'"  *Amadasu v. Christ

Hosp*., 514 F.3d 504, 507 (6th Cir. 2008).  Here, the intracorporate conspiracy doctrine applies

because the Clinics allege that all the State Farm Employees acted in the course of their

employment for the same entity.  *Id.*  The Section 1986 claims also fail because they are entirely

dependent on Section 1985 liability. *Id.*

### B.   The Clinics Do Not Plead A Viable Claim Under The ELCRA

Count VIII of the Clinic Defendants' Counter-Complaint alleges violations of Michigan's

Elliot Larsen Civil Rights Act ("ELCRA").  [Doc. 18, ¶¶ 124-139.]  The ELCRA prohibits the

denial of "the full and equal enjoyment" of the services of a "place of public accommodation"

because of, among other things, race and national origin.  *Davis*, 2010 WL 5282015 at *7–*8.

Thus, an essential element of a viable ELCRA claim is that a person was denied equal enjoyment

of services because of his or her race or national origin.[6]

---

[6]  The Clinics conclusorily allege that State Farm's actions are a "public service" under ELCRA § 301(b).
This is wrong.  Section 301(b) defines "public service" as a "public facility, department, agency, board or
commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an

Count VIII should be dismissed because it depends on the same conclusory allegations of racial discrimination that cannot sustain the Clinics' Federal Civil Rights claims (Counts I through VI). *See supra*, pp 3-6.  As described in detail above, the Clinics' allegations do not meet the *Twombly/Iqbal* pleading requirements to establish a plausible racial discrimination theory.  *Id.*  The Clinics allege no facts to support their conclusory allegation that State Farm discriminated against them, nor do they even attempt to explain how State Farm could have discriminated against them when State Farm paid the Clinics hundreds of thousands of dollars for years.  Moreover, their failure to allege facts showing that non-minorities were treated more favorably is fatal to their claim.  *Davis,* 2010 WL 5282015 at *7 – *8 (E.D. Mich. Dec. 17, 2010);  [*cf.* Doc. 18, ¶¶ 6, 8.]  Further, the Clinics' failure to plead any facts allowing a plausible inference of discriminatory motive is undermined by the more plausible explanation that State Farm's 2011 denials were a product of it uncovering the Clinics' fraudulent claims.

## C.    The Clinics Do Not Plead A Viable RICO Claim

The Clinics' RICO claims fare no better.  To plead a claim for violation of section 1962(c) of the RICO statute, a litigant must allege sufficient facts to establish that a "person" participated in the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," which resulted in injury.  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir.2006)  Here, the Clinics have not pled the most-basic the requirements of a viable RICO claim.

---

agency thereof or a tax-exempt private agency established to provide service to the public."  M.C.L. §37.2301(b).  State Farm is none of those.

**1.     The Clinics Have Not Pled A Scheme To Defraud.**

Count VII's RICO claim for violations of 1962(c)[7] must be dismissed because it does not

allege *any* predicate acts of racketeering, which the Clinics cursorily identify as purported

violations of the mail fraud statute, 18 U.S.C. § 1341.  [Doc. 18, ¶ 106.]  To properly plead mail

fraud, a plaintiff must allege "(1) a scheme to defraud, and (2) use of the mails . . . in furtherance

of the scheme."  *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d

315, 322 (6th Cir. 1999).  Here, the Clinics fail to allege even the most basic requirement of mail

fraud – a scheme to defraud.  As noted above, the Clinics' allegations of a discriminatory scheme

to defraud do not survive even fundamental Rule 8 pleading requirements, much less RICO's

9(b) requirements.  [Doc. 18, ¶¶ 92-96, 103, 105, 110-116, 120.]  The Clinics appear to allege

that State Farm "defrauded" the Clinics by denying their claims for payment through various

letters sent by the U.S. Mail.  [*Id*. ¶ 108.]  This, however, is not a fraud claim.  Their actual

allegation is that State Farm breached its duties under its insurance policies to pay the Clinics'

claims.  Where the "main thrust of plaintiff's fraud claim" is that "State Farm did not pay [them]

enough under the contract," the claim is not fraud, but a breach of contract.  *Van Emon v. State

Farm Mut. Auto. Ins. Co*., 2008 WL 3539480, at *4 (E.D. Mich. Aug. 11, 2008); *see also

Chamberlin v. Hartford Fin. Servs., Inc*., 2005 WL 2007894, at **2-3 (S.D.N.Y. Aug. 19, 2005)

(dismissing RICO claim because insurer's alleged failure to pay healthcare provider's claims was

a breach of contract, not fraud).  The Clinics cannot disguise their contract action as a RICO tort

claim.  *Fultz v. Union-Commerce Assocs*., 470 Mich. 460, 467-68 (2004) (action in tort requires

---

[7] Although the Clinics allege on 1962(c) RICO violations, to the extent that the vague references to a "conspiracy" implicate section 1962(d), such a claim would fail for several reasons.  First, the failure to allege a RICO violation destroys any RICO conspiracy claim.  *Craighead v. E.F. Hutton & Co*., 899 F.2d 485, 495 (6th Cir. 1990).  Moreover, there are no plausible allegations of any "agreement to engage in conduct that would amount to a RICO violation."  *Id*.  Finally, State Farm cannot "conspire" with its own employees who are working in the scope of their employment.  *Amadasu*, 514 F.3d at 507.

a breach of duty separate and distinct from the defendant's contractual obligations); *Haas v. Montgomery Ward & Co.*, 812 F.2d 1015, 1016 (6th Cir. 1987) ("an action in tort will not arise for breach of contract unless the action in tort would arise independent of the existence of the contract").  In the context of the No-Fault Act, the Supreme Court of Michigan has explained that "[u]nlike a no-fault claim, a fraud claim does not arise from an insurer's mere omission to perform a contractual or statutory obligation, such as its failure to pay all [No-Fault] benefits to which its insureds are entitled."  *Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399, 409 (2008).

Here, the Clinics' purported fraud scheme arises solely out of State Farm's alleged failure to pay benefits to which its insureds were entitled, which is a contractual claim with its own remedies.  Indeed, the Clinics' own allegations demonstrate that their claims do not sound in fraud, let alone sufficiently plead allegations of mail fraud to state a claim for RICO liability. Tellingly, nowhere do the Clinics allege that State Farm made a single false statement or omitted a single material fact.  Indeed, the Clinics fail to allege that there was *anything* deceptive about State Farm's conduct.  Rather, the Clinics allege merely that State Farm sent certain investigation or denial letters, without specifying *anything* false about these letters.  Nor do the Clinics allege that they – and anyone – was deceived or that they were injured by anything contained in the letters themselves.  This utter lack of allegations specifying fraudulent conduct alone requires dismissal of the RICO count.  *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 389-90 (6th Cir. 1996) (plaintiff alleging mail fraud as predicate RICO act must allege a false statement of fact) (abrogated on different grounds); *Central Distribs. of Beer v. Connecticut*, 5 F.3d 181, 184 (6th Cir. 1993) (same) (abrogated on different grounds).  Without allegations of a false misrepresentation or a scheme to defraud, the Clinics have not alleged a right to relief under RICO that is "plausible on its face."  *See Twombly*, 550 U.S. at 570.

14

The Clinics' RICO allegations also fall far below Rule 9(b)'s heightened pleading standards. *Delorean v. Cork Gully*, 118 B.R. 932, 940 (E.D. Mich. 1990) ("Rule 9(b) is especially important in a RICO case . . . ."). The Clinics' mail fraud allegations suffer from several Rule 9(b) defects, including (a) impermissibly lumping each of the defendants together without identifying the role of each in the alleged "scheme" and (b) failing to allege any content of the alleged misrepresentations and why it was false. First, the Clinics improperly lump together State Farm and two of its employees as "the State Farm Defendants" without specifically differentiating what each defendant allegedly did. [Doc. 18, ¶¶ 91-94, 96, 103-105, 108, 110-112]. This is improper and fails to satisfy Rule 9(b). *Paycom Billing Serv., Inc. v. Payment Resources Int'l*, 212 F.Supp.2d 732, 737-738 (W.D. Mich. 2002); *Gotham Print, Inc. v. Am. Speedy Printing Cent., Inc.*, 863 F. Supp. 447, 458 (E.D. Mich. 1994). Second, the Clinics fail to allege the content of any alleged fraudulent misrepresentations. To the extent that the Clinics assert that the "investigation letters" and EOBs are the false mailings that serve as the predicate for their RICO claim, they have not identified a single specific misrepresentation in any of these documents. [Doc. 18, ¶¶ 110-113.] Instead, the Clinics merely recite the conclusory allegation that the "information contained in the letters . . . implying a basis to deny claims and the information denying such claims was false." [*Id.*, ¶ 109.] This falls far short of pleading *facts* to show "the time, place, and content of the alleged misrepresentations on which [they] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003). Moreover, a RICO plaintiff alleging mail fraud must also allege *why* the statements were fraudulent, which the Clinics also fail to do. *Heinrich v. Waiting Angels Adoption Serv. Inc.*, 668 F.3d 393, 404 (6th Cir. 2012).

### 2.      The Clinics Fail to Allege The Existence of a Distinct Enterprise

Section 1962(c) prohibits a "person" who is "employed by or associated with any enterprise" from conducting or participating "in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). It is well-settled that a corporate entity cannot be both the RICO "person" and the RICO enterprise. *Davis v. Mutual Life Ins.*, 6 F.3d 367, 378-80 (6th Cir. 1993). While a corporation could be an enterprise unlawfully utilized by a RICO defendant, a RICO plaintiff cannot simultaneously allege that the corporation is also the person illegally engaged in racketeering activity. *Begala*, *v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000) ("An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself."); *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339, 344 (2nd Cir.1994).

Here, the Clinics allege that State Farm and two of its employees acted together as an association-in-fact enterprise. The only identified members of the purported enterprise, however, are State Farm and its two employees, Mr. Flannery and Ms. Lefere, whom the Clinics allege were at all times acting within the scope of their employment with State Farm.[8] [Doc. 18, ¶¶ 24-25.] Since the Counterclaims expressly alleges that the employees were acting on behalf of the corporation, the enterprise fails the distinctiveness requirement, since the enterprise – State Farm and its employees – is "simply the same person referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *see Shields v. UnumProvident Corp.*, 415 Fed. Appx. 686, 691 (6th Cir. 2011) (affirming dismissal of RICO claim against insurer where purported RICO enterprise consisted entirely of insurer, its subsidiaries, and agents).

---

[8] The Clinics also allege "other accomplices, some known and others currently unidentified to the Plaintiffs at this time" were part of the alleged RICO enterprise. [Doc. 18, ¶¶ 92, 94, 105, 116-17, 121.] The Clinics cannot create a cognizable association-in-fact enterprise by alluding to unknown individuals. *See Begala*, 214 F.3d at 781.

### 3.      The Clinics Do Not Plead A Viable RICO Enterprise

The Clinics do not allege any facts sufficient for the Court to conclude that an association-in-fact enterprise could exist.  The Clinics have alleged no facts from which the Court could conclude that State Farm, its employees, and "unidentified" actors were working together to defraud the Clinics.  The Clinics merely allege that an association-in-fact exists and nothing more.  "Such a nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense."  *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995).  The Counterclaims provide no details concerning its purpose, what roles were played by the individual members, its duration, or any of the requirements articulated by the Supreme Court in *Boyle v. United States*, 556 U.S. 938, 946 (2009).  Here, the Clinics simply allege a conclusion and a "formulaic recitation of the elements" for a RICO cause of action.  *See Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir. 2007).  Thus, Count VII should be dismissed.

### 4.      The Counterclaims Fail to Allege Proximate Cause Under RICO

The RICO claim is also fatally defective because it fails to allege that the Clinics were injured "by reason of" State Farm's alleged racketeering activity, namely mail fraud.  RICO requires a plaintiff to sufficiently allege proximate cause - that is, a plaintiff must plead that the racketeering activity "directly caus[ed]" the injury to his business or property.  *Hemi Group, LLC v. City of New York, N.Y.,* 130 S.Ct. 983, 989-90 (2010). Where a violation of § 1962(c) is alleged, "the compensable injury flowing from a [RICO] violation  . . . 'necessarily is the harm caused by [the] predicate acts."  *Anza v. Ideal Steel Supply Corp*., 547 U.S. 451, 457 (2006). Here, the Clinics have not alleged *any* harm flowing from State Farm's alleged predicate acts of mailing EOB or investigation letters. As discussed above, the Clinics are in fact alleging that State Farm breached its contractual obligations to pay for insurance benefits, which is a

contractual, not a tort, claim.  [Doc. 18, ¶¶ 109-112.)  In *Grantham & Mann, Inc. v. American Safety Prods., Inc*., 831 F.2d 596, 606 (6th Cir. 1987), the court found that the plaintiff could not recover under RICO because any injury suffered by plaintiff was "an effect proximately caused solely by [defendant's] breach of contract" and "could not have resulted from misrepresentations or omissions of material fact in [defendant's] correspondence on which [plaintiff] did not rely." The Clinics' alleged injury is similarly caused solely by State Farm's alleged breach of contracts and did not result from State Farm's letters, which the Clinics do not plead deceived them or were relied on by anybody, or parted the Clinics with any of their money.

Since the Clinics' claims for injuries are based on breach of contract, they cannot have incurred any RICO injuries until they have exhausted their available remedies.  The case of *First Nationwide Bank v. Gelt Funding Corp*., 27 F.3d 763, 768 (2d Cir. 1994) is instructive.  In *Gelt*, the plaintiff lender had filed RICO claims against borrowers and mortgagors who made misrepresentations on their loan applications.  *Id*. at 765. The court held that the plaintiff could not allege that their injuries were "ripe" because the plaintiff had not yet brought suit against the borrowers based on contractual duties, holding the lender "can only pursue the RICO treble damages remedy after his contractual rights to payment have been frustrated."  *Id*. at 768. Because a RICO defendant can only be liable for injuries proximately caused by the racketeering activity, "only after the [plaintiff] has exhausted the bargained-for remedies available to it can the [plaintiff] assert that it was damaged by the fraud, and then only to the extent of the deficiency."  *Id*. (emphasis added).  Here, as in *Gelt*, the Clinics have statutory and contractual remedies available to them under the No-Fault Act and as assignees of State Farm's insureds' rights under the policies.  *See*, *e.g*., *Regents of the Univ. of Michigan v. State Farm Mut. Auto. Ins. Co*., 250 Mich. App. 719, 733 (Mich. App. 2006) (healthcare provider has direct cause of

18

action for no-fault benefits).  Since the Clinics have alleged no RICO injury, their claim must be dismissed.

### D.   The Clinics' Tortious Interference Count Does Not State a Claim

Count IX, which purports to state a claim for tortious interference with contractual relationship and/or business expectancy, should be dismissed because it fails to allege any facts to state a plausible claim for relief.  Specifically, the Clinics fail to allege the essential elements of a claim of tortious interference with a contractual relationship, namely the existence of "(1) a contract, (2) a breach, and (3) an unjustified instigation of the breach by the defendant."  *Mahrle v. Danke*, 216 Mich. App. 343, 350 (1996).  The Clinics do not allege the existence of any contracts between themselves and the State Farm insureds for whom the Clinics submitted bills to State Farm.  [Doc. 18, ¶¶ 140-45.]  Thus, there is no contract pled with which State Farm could allegedly interfere.  Moreover, the Clinics do not plead *any* facts to show that any contractual relationships were interfered with, nor how they were allegedly affected.  [*Id.*]

Similarly, the Clinics fail to allege the requisite elements of a claim for tortious interference with a business relationship, which requires, among things, allegations of the (1) the existence of a valid business relationship or expectancy and (2) knowledge of the relationship or expectancy on the part of the defendant interferer.  *Hamilton v. City of Romulus*, 409 Fed.Appx. 826, 839 (6th Cir. 2010).  The Clinics do nothing more than parrot the elements of the claim; they allege no supporting facts. [Doc 18, ¶¶ 140-45.]  Indeed, the Clinics fail to allege any injury or any patient relationship purportedly adversely affected.  Thus, Count IX should be dismissed.[9] *See Creelgroup v. NGS American, Inc.*, 2012 WL 1288480 (E.D. Mich. April 16, 2012).

---

[9]  Count IX also fails because the more likely explanation for State Farm's 2011 denials was it discovery of the Clinics' fraud.  A defendant cannot be liable for tortious interference if its "actions were motivated by legitimate business reasons."  *Wausau Underwriters Ins. Co. v. Vulvan Development, Inc.*, 323 F.3d 396, 404 (6th Cir. 2003).  Where a plaintiff pleads no specific conduct to support conclusory allegations of

### E.     The Clinics Cannot State A Claim Under The MUTPA

Count X asks this Court to declare that State Farm's alleged actions violate Michigan's Uniform Trade Practice Act ("MUTPA"). [Doc. 18, ¶¶ 146 – 169]. As a preliminary matter, Count X should be dismissed for lack of standing because the MUTPA "did not create a right to bring a private cause of action." *Safie Enterprises, Inc. v. Nationwide Mut. Fire Ins*. Co., 146 Mich.App. 483, 494 (1985); s*ee also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Arioli*, 941 F.Supp. 646, 655 (E.D. Mich. 1996) ("[T]he Michigan Court of Appeals has repetitively held that the [M]UTPA does not grant a private cause of action."). Setting this aside, the Clinics also do not allege any facts to establish a plausible claim under the MUTPA. To the contrary, the Clinics do nothing more than provide a laundry list of the elements of the MUTPA and then proclaim in conclusory fashion that State Farm's denials of their bills amounted to violations of these MUTPA provisions.[10] [Doc. 18, ¶¶ 160 – 166.] This, of course, falls well short of the pleading requirements to survive a motion to dismiss. *Downing*, 2011 WL 2014771 at *5.

### V.     CONCLUSION

WHEREFORE, State Farm respectfully requests the dismissal of all the Counterclaims.

---

tortious interference and the circumstances suggest a legitimate reason for the defendant's conduct, the claim should be dismissed for failure to state a claim. *See Ranshaw v. City of Lansing*, 2009 WL 4352372, at *4-5 (W.D. Mich. Nov. 30, 2009).

[10]   The Clinics' request for relief in Count X demonstrates the frivolous nature of their claims. Misleadingly styled as "declaratory relief," the actual request is that this Court "order" the Michigan Secretary of State and the Commissioner of Insurance "to suspend, revoke, or limit the authority of State Farm." [Doc. 18, ¶ 169.] This request runs afoul of the Eleventh Amendment, which bars suits brought in federal court against a state and its agencies based on state law. *Kingsway General Ins. Co. v. Austin*, 2008 WL 5188263 at *2 (E.D. Mich. Dec. 8, 2008). Count X should be dismissed on this basis alone.

Dated: July 16, 2012    Respectfully submitted,

         By: /s/ Eric T. Gortner
            One of the Attorneys for State Farm
            Mutual Automobile Insurance Company


Morley Witus (P30895)      Ross O. Silverman
BARRIS, SOTT, DENN & DRIKER PLLC Kathy P. Josephson
211 West Fort St., 15th Floor    Eric T. Gortner
Detroit, MI  48226-3281     KATTEN MUCHIN ROSENMAN LLP
(313) 596-9308       525 West Monroe Street
mwitus@bsdd.com      Chicago, IL 60661-3693
             312.902.5200
             ross.silverman@kattenlaw.com
             eric.gortner@kattenlaw.com
             kathy.josephson@kattenlaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 16, 2012, I electronically filed State Farm's Motion to

Dismiss the Clinics' Counterclaims and its Brief in Support thereof, with the Clerk of Court

using the CM/ECF system which will send notification to all counsel of record.


By: <u>/s/ Eric T. Gortner          </u>
    Eric T. Gortner
    One of the attorneys for State Farm