# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-cv-11500 |
| | ) |
| Physiomatrix, Inc., | ) Hon. John C. O'Meara |
| Genex Physical Therapy, Inc., | ) |
| Kallil I. Kazan, D.C., | ) Magistrate Judge David R. Grand |
| Naim Khanafer, D.C., | ) |
| Sami Abu Farha, M.D., | ) |
| Sami Abu Farha, M.D., P.C., | ) |
| Tete Oniang'o, M.D., | ) |
| Tete Oniang'o, M.D., P.L.L.C., | ) |
| | ) |
| Defendants. | ) |

## COUNTER-DEFENDANTS MICHAEL FLANNERY'S AND NICOLE LEFERE'S MOTION TO DISMISS PHYSIOMATRIX'S AND GENEX'S COUNTERCLAIMS AND SEEKING JOINDER WITH STATE FARM'S MOTION TO DISMISS PHYSIOMATRIX'S AND GENEX'S COUNTERCLAIMS

NOW COME Michael Flannery and Nicole Lefere, by and through their counsel, to move this Honorable Court to dismiss the claims against them, in whole or in part, pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, for the reasons set forth in the attached Brief, which include, but are not limited to Physiomatrix's and Genex's lack of standing to bring all or part of the claims set forth in the Counter-Complaint; failure to plead allegations sufficient to state a claim; and failure to plead fraud with particularity. In further support of this motion to dismiss, Mr. Flannery and Ms. Lefere also join State Farm's Motion to Dismiss and State Farm's Brief in Support of Its Motion to Dismiss the Counterclaims brought in Physiomatrix's and Genex's Counter-Complaint.

Counsel for Mr. Flannery and Ms. Lefere contacted opposing counsel and sought, but did not obtain, concurrence in the relief sought.

WHEREFORE, Counter-Defendants Mr. Flannery and Ms. Lefere respectfully request that this Court dismiss the Clinics' Counter-Complaint and acknowledge Mr. Flannery's and Ms. Lefere's joinder with State Farm's Motion to Dismiss and Brief in Support of its Motion to Dismiss.

Dated: July 16, 2012　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　By:　/s/ Eric T. Gortner
　　　　　　　　　　　　　　　　　　　　　　One of the Attorneys for State Farm
　　　　　　　　　　　　　　　　　　　　　　Mutual Automobile Insurance Company

| | |
|---|---|
| Morley Witus (P30895) | Ross O. Silverman |
| BARRIS, SOTT, DENN & DRIKER PLLC | Kathy P. Josephson |
| 211 West Fort St., 15th Floor | Eric T. Gortner |
| Detroit, MI 48226-3281 | Patrick C. Harrigan |
| (313) 596-9308 | KATTEN MUCHIN ROSENMAN LLP |
| mwitus@bsdd.com | 525 West Monroe Street |
| | Chicago, IL 60661-3693 |
| | 312.902.5200 |
| | ross.silverman@kattenlaw.com |
| | eric.gortner@kattenlaw.com |
| | kathy.josephson@kattenlaw.com |
| | patrick.harrigan@kattenlaw.com |

2

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-cv-11500 |
| | ) |
| Physiomatrix, Inc., | ) Hon. John C. O'Meara |
| Genex Physical Therapy, Inc., | ) |
| Kallil I. Kazan, D.C., | ) Magistrate Judge David R. Grand |
| Naim Khanafer, D.C., | ) |
| Sami Abu Farha, M.D., | ) |
| Sami Abu Farha, M.D., P.C., | ) |
| Tete Oniang'o, M.D., | ) |
| Tete Oniang'o, M.D., P.L.L.C., | ) |
| | ) |
| Defendants. | ) |

**THIRD-PARTY COUNTERDEFENDANTS MICHAEL FLANNERY'S AND NICOLE LEFERE'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS AND IN JOINDER WITH STATE FARM'S MOTION TO DISMISS**

Third-Party Counterdefendants Michael Flannery and Nicole Lefere ("Mr. Flannery and Ms. Lefere," collectively "the State Farm Employees") submit the following Brief in Support of Their Motion to Dismiss The Clinics' Counterclaims Pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure ("Motion"), and in Joinder to State Farm's Motion to Dismiss and its Brief in Support of Its Motion to Dismiss.

## STATEMENT OF ISSUES PRESENTED

I. Have the Clinics failed to state a claim of racial discrimination under 42 U.S.C. §§ 1983, 1985(3), and 1986 in Counts I through VI?

   Counter-Plaintiffs' answer:   No
   Third-Party Counter-Defendants' answer:   Yes

II. Have the Clinics failed to state a claim of racial discrimination under Michigan's Elliot-Larsen Civil Rights Act in Count VIII?

   Counter-Plaintiffs' answer:   No
   Third-Party Counter-Defendants' answer:   Yes

III. Have the Clinics failed to state a claim under federal RICO in Count VII?

   Counter-Plaintiffs' answer:   No
   Third-Party Counter-Defendants' answer:   Yes

IV. Have the Clinics failed to state a claim of tortious interference with a contractual relationship/business expectancy in Count IX?

   Counter-Plaintiffs' answer:   No
   Third-Party Counter-Defendants' answer:   Yes

V. Have the Clinics failed to state a claim under Michigan's Uniform Trade Practice Act or a state of claim for any relief in Count X?

   Counter-Plaintiffs' answer:   No
   Third-Party Counter-Defendants' answer:   Yes

VI. Have the Clinics failed to state a claim for inapplicability of government immunity in Count XI?

   Counter-Plaintiffs' answer:   No
   Third-Party Counter-Defendants' answer:   Yes

## CONTROLLING AUTHORITIES

Federal Rule of Civil Procedure 8(a)

Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 12(b)(6)

The Eleventh Amendment to the United States Constitution

*Am. Mfrs. Mut. Ins. Co, et al v. Sullivan,* 526 U.S. 40 (1999)

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*Black v. Pension Ben. Guar. Corp., 2011* WL 3875055 (E.D. Mich. Sept. 2, 2011)

*Collyer v. Darling,* 98 F.3d 211 (6th Cir. 1996)

*Davis v. City of Dearborn,* 2010 WL 5282015 (E.D. Mich. Dec. 17, 2010)

*Downing v. Life Time Fitness, Inc.,* 2011 WL 2014771 (E.D. Mich. May 24, 2011)

*First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763 (2d Cir. 1994)

*Kingsway General Ins. Co. v. Austin*, 2008 WL 5188263 (E.D. Mich. Dec. 8, 2008)

*Reves v. Ernst & Young,* 507 U.S. 170 (1990).

*U.S. ex rel. McNulty v. Reddy Ice Holdings, Inc.*, 835 F. Supp. 2d 341 (E.D. Mich. 2011)

*VanDenBroeck v. Commonpoint Mortg. Co.*, 22 F.Supp.2d 677 (W.D. Mich. 1998)

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................... 1

II. STATEMENT OF FACTS ..................................................................................... 2

III. LEGAL STANDARDS .......................................................................................... 3

IV. ARGUMENT .......................................................................................................... 3

    A. The Clinics' Federal Civil Rights Causes of Actions All Fail As To The State Farm Employees ................................................................................ 3

        1. The Federal Civil Rights Counts Fail Because The Allegations Do Not Plead Any Viable Claim of Racial Discrimination ......................... 4

        2. The Claims Under Section 1983 Also Fail Because The State Farm Employees Are Not State Actors ............................................................ 5

        3. The Claims Under Sections 1985 and 1986 Also Fail Because They Do Not Plead A Conspiracy ..................................................................... 7

    B. The Clinics Do Not Plead A Viable RICO Claim Against the State Farm Employees ................................................................................................... 8

    C. The Clinics Do Not Plead A Viable Claim Under The ELCRA ................ 9

    D. The Clinics' Tortious Interference Count Does Not State a Claim .......... 10

    E. The Clinics Cannot State A Claim Under The MUTPA ........................... 11

V. CONCLUSION ..................................................................................................... 12

I.  INTRODUCTION

Physiomatrix's and Genex's (the "Clinics") Counter-Complaint and Third-Party Complaint ("the Counterclaims") [Doc. 18] should be dismissed in its entirety as to the State Farm Employees because all of the counts included therein fail to state any valid claims. Rather, in response to State Farm's well-pleaded Complaint [Doc. 1], the Clinics assert scattershot and frivolous allegations, none of which are supported by *any* factual allegations to meet Rule 8, much less Rule 9(b), pleading standards. In Counts I through VI, the Clinics attempt to plead violations of various Federal Civil Rights statutes based on the wholly unsupported and conclusory allegation that State Farm suddenly stopped paying the Clinics' bills in 2011 because of racial animus toward healthcare providers of "Arabic descent." These Counts, as well as the similar Count VIII under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), should be dismissed not only against State Farm, but also as to Mr. Flannery and Ms. Lefere ("State Farm Employees"), because there are simply *no* facts pled, nor could there be, to allow a plausible inference that they had *anything* to do with a purported "scheme" to discriminate against providers of Arabic descent. The Section 1983 claims all fail because the State Farm Employees are not state actors, and thus cannot be exposed to any Section 1983 liability. Thus, Count XI's request for a declaration of avoidance of Government immunity is moot.

The Clinics' Count VII fails to plead federal RICO claims for the reasons stated in State Farm's Brief in support of its motion to dismiss the Counterclaims ("State Farm Brief"), but also with particularity for the State Farm Employees because the Clinics do not plead any facts to describe Mr. Flannery's and Ms. Lefere's role in the alleged enterprise. Count IX's attempts to plead a claim for tortious interference of contractual or business relationships, but fails to plead the existence of any contract, and is otherwise devoid of any facts to establish interference with any business relationships. Finally, Count X is an impermissible attempt to seek declaratory and

injunctive relief based on the Michigan Uniform Trade Practices Act (MUTPA) – but the MUTPA does not provide any private cause of action, and thus the Clinics have no standing here.

## II. STATEMENT OF FACTS

As detailed more fully in the State Farm Brief, State Farm's Complaint alleges that the Clinics are central players in a five-year scheme to defraud State Farm out of nearly two million dollars by submitting claims for medically unnecessary physical therapy services. [State Farm Br. at p 2.] In response to State Farm's Complaint, the Clinics now allege that State Farm, two of its employee claims adjusters, Michael Flannery and Nicole Lefere, and "others not yet identified," created a scheme in 2011 to deny the Clinics' insurance claims, purportedly based on the alleged Arabic descent of the particular healthcare providers (the "Counterclaims"). [Doc. 18, ¶¶ 1, 6.] According to the Clinics, State Farm's alleged "scheme" resulted from its purported unsuccessful lobbying efforts to modify the No-Fault Act in order to reduce benefit payments to all providers. [*Id.*, ¶¶ 2, 5.] Having "lost" such lobbying efforts, the Clinics allege that in the Spring or Summer of 2011, State Farm began a "scheme" to deny claims submitted by healthcare providers of Arabic descent. [*Id.,* ¶¶ 6, 8, 44-45.]

With respect to the State Farm Employees, the Clinics allege only the following: each was "an insurance adjuster" who was "responsible for many of the medical payment denials" submitted by the Clinics [Doc. 18, ¶¶ 24-25], they were acting "within the scope of [] employment with Defendant State Farm" [*id.*], they issued investigation letters [*id*., ¶¶ 47, 112], they issued Explanation of Benefits letters, [*id*., ¶¶ 110, 112], and they "engaged in the operation and/or management" of State Farm's alleged scheme. [*Id*., ¶ 95.]

2

### III.  LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, a counterclaim "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face."  *U.S. ex rel. McNulty v. Reddy Ice Holdings, Inc.*, 835 F. Supp. 2d 341, 347 (E.D. Mich. 2011) (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal,* 556 U.S. at 678.  A court must draw on "judicial experience and common sense" to determine whether the complaint has stated enough specific facts to infer "more than mere possibility of misconduct," but rather a plausible claim for relief.  *Id.* at 678-79.

### IV.  ARGUMENT

#### A.  The Clinics' Federal Civil Rights Causes of Actions All Fail As To The State Farm Employees

In Counts I through VI, the Clinics attempt to raise causes of action under several Federal Civil Rights statutes, namely 42 U.S.C. §§ 1983, 1985(3), and 1986,[1] based solely on State Farm's alleged "scheme" of racial discrimination to deny payment of claims from healthcare providers of Arabic descent. [Doc. 18, ¶ 6.]  As described more fully in the State Farm Brief, a key threshold pleading requirement to establish a viable claim under any of the Federal Civil Rights statutes is to plead sufficient facts to allow this Court to determine that the Clinics' claims of racial discrimination are plausible.  [State Farm Br. at pp 4-7.]  Here, the Clinics have failed to plead *any* facts to demonstrate that their conclusory allegations against the State Farm Employees are plausible.

---

[1]  Counts I and II seek relief under both Sections 1983 and 1985, Count III seeks relief under Section 1986, and Counts IV through VI plead damages or attorneys fees related to these three Sections.

3

1. **The Federal Civil Rights Counts Fail Because The Allegations Do Not Plead Any Viable Claim of Racial Discrimination**

Counts I through VI all fail because they are predicated on nothing more than conclusory allegations that State Farm denied the Clinics' claims beginning in 2011 because of purported racial animus toward healthcare providers of "Arabic descent." [Doc. 18, ¶¶ 6, 8.] As explained in the State Farm Brief, these allegations fall woefully short of meeting the Rule 8 pleading requirements for all the State Farm Defendants. [State Farm Br. at pp. 4-7.] Specifically, *Twombly* and *Iqbal* have made clear that claims without enough specific factual allegations to allow this Court to determine whether the claim for relief is plausible must be dismissed. *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Plaintiffs cannot hide behind conclusory allegations masquerading as "facts" or simply parrot the elements of a cause of action. *Id.* Indeed, the Court has an obligation to use common sense and its judicial experience to determine whether the claims are plausible or whether competing explanations are equally, if not more, plausible. *Id.* at 679.

The Clinics' allegations are particularly lacking with respect to the State Farm Employees. The Clinics do not allege that Mr. Flannery and Ms. Lefere harbored any racial animus against the Clinics or had any role in devising State Farm's alleged "scheme." Nor do they include any facts supporting the allegation that Mr. Flannery and Ms. Lefere held any decision-making authority in administering the scheme. Indeed, the sole allegation regarding Mr. Flannery's and Ms. Lefere's roles in the alleged "scheme" are limited to the single assertion that they sent investigation letters and Explanation of Benefits letters – acts that are entirely consistent with their job duties as claims adjusters for State Farm. [Doc. 18, ¶¶ 47, 110, 112.] Simply put, the sum total of the Clinics' factual allegations as to the State Farm Employees' participation in the "scheme" is that they issued the letters pursuant to their employment that

4

denied certain unspecified claims. Nor do the Clinics plead any instances of Mr. Flannery or Ms. Lefere ever purportedly denying another provider's claim because of Arabic or other racial background, much less facts suggesting that they treated any similarly situated provider more favorably because the provider was not of Arabic descent. These types of conclusory allegations are plainly insufficient under *Twombly/Iqbal* standards. *Iqbal*, 556 U.S. at 678; [State Farm Br. at pp. 4-7.]

As described in detail in the State Farm Brief, the Clinics' threadbare allegations also ask this Court to ignore the "more likely" explanation that State Farm's denial of claims beginning in 2011 was the product of State Farm's discovery of the fraudulent nature of their claims, rather than some purported newly developed racial animus toward the Clinics. [State Farm Br. at pp. 6-7]. Indeed, it is undisputed that State Farm paid the Clinics hundreds of thousands of dollars over the course of many years before it began denying claims in the Spring or Summer of 2011. This "more likely" explanation applies in full force to Mr. Flannery and Ms. Lefere because the Counterclaims do not – and cannot – plead that they were not the claims adjusters who also processed and approved payment for the Clinics' claims in the pre-Spring 2011 time period. The Clinics have not even attempted to plead facts to render their theory of racial discrimination sensible – much less plausible – in light of the State Farm's history of payments. Accordingly, Counts I through VI should be dismissed as to the State Farm Employees.

### 2. The Claims Under Section 1983 Also Fail Because The State Farm Employees Are Not State Actors

Counts I, II, IV, V and VI are all based on liability under 42 U.S.C. § 1983 ("Section 1983") [Doc. 18, ¶¶ 62-73, 79-85], but none of these state a claim because Mr. Flannery and Ms. Lefere are not state actors. As described in detail in the State Farm Brief, a core predicate for establishing Section 1983 liability is that the challenged actions must be equivalent to state

5

action. [State Farm Br. at pp. 7-10.]; *Am. Mfrs. Mut. Ins. Co , et al v. Sullivan*, 526 U.S. 40, 49-50 (1999). First, as indicated directly above, the Clinics have not alleged any valid deprivation of Constitutional or statutory rights, and that alone is sufficient to dismiss the Counts under Section 1983. Second, as explained in the State Farm Brief, neither State Farm nor its agents were transformed into state actors by virtue of processing some small number of claims assigned by the ACF. [State Farm Br. at pp. 7-10.]

The allegations are particularly deficient as to the State Farm Employees' role in the alleged deprivations. Even if State Farm's conduct in processing ACF claims could be attributed to the State of Michigan, the allegations with regard to Mr. Flannery and Ms. Lefere are still deficient because the Clinics have not alleged that *they* processed and denied any of the Clinics' claims assigned to State Farm by the ACF. "'[A] public official is liable under § 1983 only if he *causes* the plaintiff to be subjected to a deprivation of his constitutional rights.'" *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (quoting *Baker v. McCollan*, 443 U.S. 137 (1979) (emphasis added). The Clinics allege only that Mr. Flannery and Ms. Lefere were broadly "responsible for many of the medical payment denials," and "engaged in the operation and/or management" of the alleged scheme. [Doc. 18, ¶¶ 24-25, 95.] However, the only specific description of their role is that they issued investigation and Explanation of Benefits letters. [Doc. 18, ¶¶ 47, 110, 112.] These spartan descriptions do not suffice to establish public official liability. *See McKinley*, 404 F.3d at 438; *see also Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 608 (6th Cir. 2007). Accordingly, Counts I, II, IV, V and VI should be denied on this additional basis.

6

### 3. The Claims Under Sections 1985 and 1986 Also Fail Because They Do Not Plead A Conspiracy

Counts II, III, and IV also allege claims under Sections 1985(3) and 1986, alleging that the State Farm Defendants engaged in an unlawful conspiracy. [Doc. 18, ¶¶ 69-85.] First, as described above and in the State Farm Brief, these Counts all fail because there are no facts to support a claim of racial discrimination under these statutes. [State Farm Br. at pp. 4-7.] Second, they fail as to Mr. Flannery and Ms. Lefere because there are no allegations even suggesting that they personally participated in the alleged conspiracy. And third, these counts also fail for the additional reason that the Clinics do not allege the elements of conspiracy. To plead a claim under Section 1985(3), a claimant must allege "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen." *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). However, under the intracorporate conspiracy doctrine, "where 'all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy.'" *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) (quoting *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991)).

Because the State Farm Employees alleged to be acting in concert would have been acting in the course of their employment for the same entity, the intracorporate conspiracy doctrine applies and no conspiracy can be said to have taken place. And because "failure to state a claim for relief under § 1985 is fatal to [] claims brought pursuant to § 1986 because a § 1986 claim is dependent upon a viable § 1985 claim," the Clinics' claims under § 1986 are also inadequate. *Id.*

7

### B.     The Clinics Do Not Plead A Viable RICO Claim Against the State Farm Employees

As established in the State Farm Brief, Count VII of the Clinics' Counterclaims (the RICO count) should be dismissed because it fails to (1) allege any predicate acts of racketeering; (2) plead mail fraud with particularity under Rule 9(b); (3) allege a distinct RICO enterprise; (4) allege a viable RICO enterprise; or (5) allege any injury "by reason" of racketeering.  [State Farm Br. at pp. 12-19.]  All of these fundamental pleading failures apply in full force to the State Farm Employees.  [*Id.*]

The RICO allegations are particularly deficient with respect to the State Farm Employees.  Specifically, the Counterclaims contain *no* facts identifying the State Farm Employees' particular role in the alleged mail fraud.  At best, the Counterclaims allege that some of the investigation letters and EOB letters were issued "through" Mr. Flannery and Ms. Lefere, but the Clinics do not allege facts to suggest that either employee participated in authoring or sending the letters.  [Doc. 18,  ¶¶ 110, 112.]  This complete lack of specificity as to the roles of Mr. Flannery and Ms. Lefere in the alleged scheme compels dismissal under Fed. R. Civ. P. 9(b). *Khamis v. Atlas Oil Co.*, 2005 WL 2319001, at *4 (E.D. Mich. Sept. 21, 2005) (dismissing RICO counts where "plaintiff's allegations, which lump all of the defendants together and do not describe any specific activities undertaken by any defendant, do not even marginally conform to Sixth Circuit requirements).

The Counterclaims are also devoid of any facts to support the allegation that Mr. Flannery or Ms. Lefere participated in the operation or management of the alleged association-in-fact enterprise.  *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1990).  In *Reves*, the Supreme Court held that liability under § 1962(c) requires that the RICO defendant "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."

8

*Id.* at 185 (emphasis in original). As discussed above, the Counterclaims specifically allege that Mr. Flannery and Ms. Lefere were acting within the scope of their employment at all times. [Doc. 18, ¶¶ 24, 25.] The Clinics do not allege any facts to suggest that the State Farm Employees conducted or participated in the enterprise in any way beyond performing their job duties as "insurance adjusters," much less that they had any operational or managerial role in the alleged enterprise or any control over it. The Counterclaims do not allege that either employee had any involvement in the decision to deny the Clinics' claims. *See Stone v. Kirk*, 8 F.3d 1079, 1091-92 (6th Cir. 1993) (sales representative who "had no part in directing [enterprise's] affairs" could not be liable under *Reves*). In short, the Counterclaims do not allege that the State Farm Employees did anything but perform their jobs and participate "in their own affairs." *Reves* at 185. Thus, the Clinics' allegation in Paragraph 95, that the State Farm Employees participated in "the operation and/or management of the enterprise" is conclusory, speculative, and insufficient to survive a motion to dismiss under Rule 12(b)(6). *VanDenBroeck v. Commonpoint Mortg. Co.*, 22 F.Supp.2d 677, 684 (W.D. Mich. 1998), *aff'd*, 210 F.3d 696 (6th Cir. 2000) (dismissing RICO claim because the plaintiff's "naked allegation" that the defendants "participated in the conduct of the affairs of the enterprise" was insufficient to sustain a RICO claim).

      **C.**    **The Clinics Do Not Plead A Viable Claim Under The ELCRA**

Count VIII of the Clinics' Counter-Complaint makes claims under Michigan's Elliot Larsen Civil Rights Act ("ELCRA"). As discussed in the State Farm Brief, the Clinics' ELCRA claims should be dismissed due to an absolute failure to plead sufficient factual allegations, based on the requirements of *Twombly* and *Iqbal*, to show that it is plausible that the Clinics' bills were denied payment on the basis of race, rather than because of State Farm's fraud investigation. [State Farm Br. at pp. 11-12.] With respect to the State Farm Employees, the deficiencies in the Clinics' ELCRA pleadings are even more apparent. Specifically, the

Counterclaims echo portions of the ELCRA [Doc. 18, ¶¶ 125-128, 132-139], stating that the "State Farm Defendants" have violated portions of the ELCRA [*id.* ¶¶ 129-131] and that Mr. Flannery and Ms. Lefere were "responsible for many of the medical payment denials referenced [in the Counter-Complaint]." [*Id.* ¶¶ 24-25.] The only factual description of Mr. Flannery's and Ms. Lefere's roles is that they issued certain investigation and Explanation of Benefits letters. [Id. ¶¶ 47, 110, 112.] The Counter-Complaint amounts to nothing more than a recitation of portions of the ELCRA peppered with conclusory allegations. When making a claim under Elliott-Larsen, a failure to allege facts suggesting that non-minorities were treated differently, and mere conclusory allegations that certain treatment was due to minority status, amount to "precisely the type of 'defendant-unlawfully-harmed-me accusation'" that *Ashcroft v. Iqbal* deemed insufficient. *David v. City of Dearborn*, 2010 WL 5282015 at *7 – *8 (E.D. Mich. Dec. 17, 2010). The Clinics have not made a single factual allegation as to how the State Farm Employees allegedly discriminated against the Clinics, why they allegedly did so, or how similarly situated non-minority providers were treated differently. Accordingly, Count VIII of the Counter-Complaint should be dismissed with respect to Mr. Flannery and Ms. Lefere.

        **D.**      **The Clinics' Tortious Interference Count Does Not State a Claim**

As explained in the State Farm Brief, Count IX, which purports to state a claim for tortious interference with contractual relationship and/or business expectancy, should be dismissed because it fails to allege any factual matter to state a plausible claim for relief. [State Farm Br. at p 19.] Specifically, it does not state a claim of tortious interference with a contractual relationship, because the Clinics do not allege the existence of any contracts between themselves and the State Farm insureds who received physical therapy at the Clinics. Count IX does not adequately plead a claim for tortious interference with a business relationship, because the Clinics do not allege any facts to support any of the elements of the cause of action. [Doc.

18, ¶¶ 140-145.] Indeed, the Clinics fail to allege that they were injured or that a relationship with even a single patient has been adversely affected. Accordingly, Count IX should be dismissed. *See Creelgroup v. NGS American, Inc.*, 2012 WL 1288480 (E.D. Mich. April 16, 2012) (dismissing tortious interference claim where plaintiff alleged only "sparse" facts and "conclusory statements that recite elements of tortious interference").

### E. The Clinics Cannot State A Claim Under The MUTPA

Count X of the Clinics' Counter-Claim asks this Court to declare that the alleged actions of State Farm and the State Farm Employees violate various provisions of Michigan's Uniform Trade Practice Act ("MUTPA"). [Doc. 18, ¶¶ 146-169.] As discussed in the State Farm Brief, Count X should be dismissed because MUTPA does not confer a private right of action to parties like the Clinics. [State Farm Br. at p 20.] In addition, the State Farm Brief points out that the Clinics fail to allege facts sufficient to state a claim for relief against State Farm under MUTPA. [*Id.*]

With respect to the State Farm Employees, the Clinics' allegations do even less. More specifically, the Clinics simply state that "Flannery and Lefere are each a 'person' within the meaning of Michigan's Uniform Trade Practices Act." [Doc. 18, ¶ 154.] They then list a few pages of MUTPA provisions and make the wholly conclusory claim that "the State Farm Defendants violated" those statutory provisions. [Doc. 18, ¶¶ 160-166.] There is virtually nothing in Count X that pertains specifically to Mr. Flannery or Ms. Lefere, and as such, the sum total of the Clinics' allegations do not even amount to the "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that the Supreme Court held cannot survive a motion to dismiss, and as such this Court should dismiss this count. *Downing v. Life Time Fitness, Inc.*, 2011 WL 2014771 at *5 (E.D. Mich. May 24, 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

## V. CONCLUSION

WHEREFORE, Counterdefendants Michael Flannery and Nicole Lefere respectfully request that this Court dismiss the Clinics' Counterclaims.


Dated: July 16, 2012                                  Respectfully submitted,

                                                      By:   /s/ Eric T. Gortner
                                                                One of the Attorneys for State Farm
                                                                Mutual Automobile Insurance Company

| | |
|---|---|
| Morley Witus (P30895) | Ross O. Silverman |
| BARRIS, SOTT, DENN & DRIKER PLLC | Kathy P. Josephson |
| 211 West Fort St., 15th Floor | Eric T. Gortner |
| Detroit, MI 48226-3281 | Patrick C. Harrigan |
| (313) 596-9308 | KATTEN MUCHIN ROSENMAN LLP |
| mwitus@bsdd.com | 525 West Monroe Street |
| | Chicago, IL 60661-3693 |
| | 312.902.5200 |
| | ross.silverman@kattenlaw.com |
| | eric.gortner@kattenlaw.com |
| | kathy.josephson@kattenlaw.com |
| | patrick.harrigan@kattenlaw.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2012, I electronically filed Counter-Defendants Flannery's and Lefere's Motion to Dismiss the Clinics' Counterclaims and their Brief in Support thereof, and their Motion for Joinder in State Farm's Motion to Dismiss and its Brief in Support thereof, with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.

By: /s/ Eric T. Gortner
Eric T. Gortner
One of the attorneys for State Farm