UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE CO.,

                                          Case No. 12-11500

     Plaintiff,

                                          Hon. John Corbett O'Meara

v.

PHYSIOMATRIX, INC., *et al.,*

     Defendants.
_____/

## OPINION AND ORDER REGARDING MOTIONS TO DISMISS

Before the court are several motions: (1) Defendants Sami Abu Farha, M.D. and

Sami Abu Farha, M.D., P.C.'s motion to dismiss pursuant to Rule 12(b)(6); (2)

Defendants Physiomatrix, Genex, Kallil Kazan, and Naim Khanafer's joinder in Abu

Farha's motion to dismiss; (3) Plaintiff State Farm's motion to dismiss countercomplaint;

(4) Michael Flannery and Nicole Lefere's motion to dismiss counterclaims; (5) Kevin

Clinton's motion to dismiss third-party complaint; and (6) Ruth Johnson's motion to

dismiss third-party complaint.  The court heard oral argument on January 17, 2013, and

took the matter under advisement.

## BACKGROUND FACTS

In its complaint, State Farm alleges that Defendants engaged in a scheme to

defraud State Farm through the submission of fraudulent claims for physical therapy

services that were medically unnecessary or not actually performed.  The services were

provided to patients who were involved in motor vehicle accidents and eligible for

Personal Injury Protection benefits under State Farm policies.  The physical therapy

clinics allegedly involved in the scheme are Defendants Physiomatrix and Genex, of

which Defendants Kallil Kazan and Naim Khanafer are shareholders and officers.

Defendants Sami Abu Farha and Tete Oniang'o are physicians who allegedly provided

fraudulent diagnoses and prescriptions to patients to allow them to obtain unnecessary

physical therapy treatment at the Physiomatrix and Genex clinics ("the Clinics").  State

Farm essentially alleges four causes of action against Defendants: (1) common law fraud;

(2) violations of 18 U.S.C. §§ 1962(c) and (d) (RICO); (3) unjust enrichment; and (4)

declaratory judgment.

Defendants Physiomatrix and Genex filed counterclaims against State Farm and a

third-party complaint against two State Farm employees, Michael Flannery and Nicole

Lefere, as well as Michigan Secretary of State Ruth Johnson and Michigan Commissioner

of Insurance Kevin Clinton.  Physiomatrix and Genex allege that State Farm and its

employees violated RICO by fraudulently issuing blanket denials of legitimate PIP

claims.  Defendants also allege that State Farm violated 42 U.S.C. §§ 1983, 1985, and

1986 by denying claims assigned to it from the state Assigned Claims Facility based upon

the race, religion, alienage, or national origin of the health care providers involved.

Defendants seek a declaratory judgment against the Michigan Commissioner of Insurance

Kevin Clinton and Secretary of State Ruth Johnson, requiring them to order State Farm to

cease its allegedly illegal conduct and suspend, revoke, or limit its authority to act in

Michigan.

## LAW AND ANALYSIS

### I.    Standard of Review

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." Id. at 570.  See also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.  See also Hensley Manuf. v. Propride, Inc., 579 F.3d 603, 609 (6th Cir. 2009).

### II.    Dr. Abu Farha's Motion to Dismiss State Farm's Complaint

Defendants Sami Abu Farha, M.D., and Sami Abu Farha, M.D., P.C. (collectively referred to as "Abu Farha") seek dismissal of State Farm's complaint pursuant to Rule 12(b)(6).  Defendants Physiomatrix, Genex, Kazan, and Khanafer filed a notice of joinder in Abu Farha's motion.  (Defendants Tete Oniang'o, M.D., and Tete Oniang'o, M.D., P.L.L.C. have filed neither a motion nor joinder.)

Abu Farha seeks dismissal on four grounds: (1) State Farm does not have a private

cause of action under the No-Fault Act and the Act has abrogated its common law claims;

(2) State Farm's RICO claims are "reverse pre-empted" by the McCarran-Ferguson Act;

(3) State Farm has failed to plead facts sufficient to support a fraud or RICO action; and

(4) State Farm has failed to plead facts sufficient to support a claim of unjust enrichment.

### A.     Private Right of Action under No-Fault Act/Common Law Claims

Abu Farha contends that State Farm does not have a private right of action under

the Michigan Insurance Code, which provides that fraudulent claims for benefits are to be

prosecuted by certain "authorized agencies."  See M.C.L. 500.4501, 500.4511.  It is true

that M.C.L. 500.4511 does not provide a private right of action for a claim of insurance

fraud.  This argument is a bit of a red herring, however, because State Farm is not seeking

relief under M.C.L. 500.4511.

Rather, State Farm has brought common law fraud and unjust enrichment claims.

Abu Farha argues that these claims are superseded by the No-Fault Act.  Abu Farha does

not cite any persuasive authority for this proposition, however.   For example, Abu Farha

cites Allstate Ins. Co. v. Global Medical Billing, Inc. (Case No. 09-14975, E.D. Mich.,

Zatkoff, J.), which is distinguishable.  In that case, the insurer sought relief under M.C.L.

500.4511, relief which State Farm is not seeking here.  Further, the court in Global

Medical found that the plaintiff insurer lacked standing because it had not suffered an

injury in fact – an argument that is not applicable here.

The Michigan Supreme Court has recognized that a "fraud claim is clearly distinct

from a no-fault claim" and that a fraud claim may be brought against an insurer by an

-4-

insured in the No-Fault context.  Cooper v. Auto Club Ins. Ass'n, 481 Mich. 399, 408-409 (2008).  See also Paquette v. State Farm Mut. Auto. Ins. Co., 2009 WL 2168918 at *3-4 (Mich. App. July 21, 2009) ("[D]efendant's contention that a fraud claim may not be maintained where the underlying misconduct arises from a no-fault action is simply without merit.").  In contrast, there is no authority holding that the No-Fault Act supersedes a fraud or unjust enrichment claim.

In essence, Abu Farha is arguing that State Farm does not have a cause of action under the No-Fault Act for insurance fraud, and that State Farm also does not have a common law cause of action for fraud.  There is no authority suggesting that insurers are without any remedy for insurance fraud.  Accordingly, the court will deny Abu Farha's motion to dismiss State Farm's common law fraud and unjust enrichment claims.

## B.      Reverse Preemption of RICO Claims

Abu Farha also contends that State Farm's RICO claims are reverse preempted by the McCarran-Ferguson Act, which provides that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a).  The Act further provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically related to the business of insurance." 15 U.S.C. § 1012(b).  The Act "thus precludes application of a federal statute in face of state law 'enacted . . . for the purpose of regulating the business of insurance,' if the federal measure does not

'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law." Brown v. Cassens Transp. Co., 546 F.3d 347, 357 (6th Cir. 2008) (quoting Humana, Inc. v. Forsyth, 525 U.S. 299, 307 (1999)).

Abu Farha argues that the RICO claims are reverse preempted because (1) RICO does not specifically relate to the business of insurance; (2) the Michigan no-fault laws were enacted for the purpose of regulating the business of insurance; and (3) application of RICO would impair Michigan's no-fault laws.  State Farm responds that (1) Defendants' fraudulent conduct is not "the business of insurance"; and (2) RICO would not invalidate, impair, or supersede Michigan's No-Fault Act.

The court need not undertake an analysis of whether the conduct here constitutes the "business of insurance," because the application of RICO would not impair Michigan's No-Fault Act.  "When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." Humana, 525 U.S. at 310.

Abu Farha argues that RICO conflicts with Michigan's insurance code because the No-Fault Act does not provide for a civil cause of action for insurance fraud.  Rather, the insurance code provides for criminal prosecution and remedies for insurance fraud.  See M.C.L. 500.4511 (fraudulent insurance acts punishable by up to four years in prison and fine of $50,000).  As discussed above, however, there is no legal authority suggesting that the insurance code has abrogated a common law action for fraud.  In this regard, the

application of RICO is consistent with state law, which provides civil liability for fraud.

See Humana, 525 U.S. at 311-12 (finding RICO consistent with Nevada insurance

scheme that provided "both statutory and common-law remedies to check insurance

fraud").

   This is in contrast to the case relied upon by Abu Farha, Riverview Health Inst.

LLC v. Medical Mut. of Ohio, 601 F.3d 505, 515-19 (6th Cir. 2010).  In Riverview, the

plaintiff health care providers alleged that the defendant insurer schemed "to delay,

diminish and deny payment of . . . lawful claims of patient-insureds as submitted by out-

of-network health providers."  Id.  The court noted that Ohio's Prompt Pay Act regulates

the timely processing and payment of insureds' healthcare claims and provides for an

administrative remedy for violations.  The court further found that the Prompt Pay Act

was the plaintiffs' "exclusive source of remedies," because the plaintiffs had no viable

statutory or common law claims.  Conversely, the court noted that Ohio's RICO statute

covered fraud against insurers and that "[a]ccordingly, insurers still have a cause of action

under both Ohio and federal RICO for fraud perpetrated against them by insureds."  Id. at

519.

   In this case, State Farm does not have an "exclusive remedy" under the Michigan

Insurance Code for fraud that would conflict with the application of RICO.  Nor is there

evidence that the application of RICO would impair Michigan's regulatory scheme.

Although the code provides for criminal penalties for insurance fraud, there is no

indication that Michigan intended to preclude a common law civil cause of action.  The

court finds that RICO complements and augments, rather than impairs, Michigan's

regulatory scheme.  See also State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp.2d

212, 224-225 (E.D. N.Y. 2009) ("Here, State Farm's RICO claims supplement, rather

than disturb, New York's insurance regime by 'providing another vehicle by which to

carry forth the substantive policies' of the State of New York."); Weiss v. First Unum Ins.

Co., 482 F. 3d 254, 267 (3d Cir. 2007) ("[I]t is logical to assume, as the Supreme Court

did in *Humana*, that deeming federal civil RICO suits to be unavailable because they

would impair the state scheme would deprive insurers of an important weapon of self-

defense."); Brown v. Cassens Transp. Co., 546 F.3d 347, 362 (6th Cir. 2008) (finding

claim for fraudulent denial of benefits under RICO does not "impair" Michigan's

Worker's Disability Compensation Act scheme).  State Farm's RICO claims are not

reverse preempted by the McCarran-Ferguson Act.


#### C.    Pleading Standards for RICO/Fraud Claims

Abu Farha also argues that State Farm has not properly pleaded RICO or fraud

claims.  State Farm alleges that Defendants have violated 18 U.S.C. § 1962(c) of RICO,

which provides:

> It shall be unlawful for any person employed by or associated
> with any enterprise engaged in, or the activities of which
> affect, interstate or foreign commerce, to conduct or
> participate, directly or indirectly, in the conduct of such
> enterprise's affairs through a patter of racketeering activity or
> collection of unlawful debt.

18 U.S.C. § 1962(c).  To state a RICO claim under this section, State Farm must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Moon v. Harrison Piping Supply, 465 F.3d 719, 723 (6th Cir. 2006) (quoting Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)).  Abu Farha contends that State Farm has failed to properly allege (1) the existence of a RICO enterprise; (2) that Abu Farha participated in the conduct of the enterprise; and (3) the elements of mail fraud or fraud (racketeering activity).

As for the enterprise, Abu Farha argues that State Farm fails to allege any hierarchical structure or structure amenable to consensual decision making.  State Farm is not required to make such allegations under RICO, however.  The Supreme Court has described the requirement of a structure as follows:

> From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. As we succinctly put it in *Turkette*, an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct."

Boyle v. United States, 556 U.S. 938, 946 (2009) (citation omitted).  The Court rejected the argument that an enterprise must have additional structural attributes such as a structural hierarchy, role differentiation, a chain of command, or consensual decision-making  Id. at 947-48.

State Farm has sufficiently alleged the existence of an enterprise and that Dr. Abu

Farha participated in it.  State Farm alleged (1) the purpose of the enterprise (the submission of fraudulent claims); (2) the relationships between those associated with the enterprise (the doctors, physical therapy clinics, and the personal injury attorneys with whom they had quid pro quo cross-referral relationships); and (3) sufficient longevity to permit the enterprise's purpose (from October 2007 to the present). See Compl. at ¶¶ 4-9, 37-40.  State Farm also alleged that "Dr. Abu Farha's role is essential to the success of the fraud scheme because Michigan law requires a prescription from a medical doctor . . . before a physical therapist can perform physical therapy services on a patient." Compl. at ¶ 26.  State Farm alleges that Dr. Abu Farha provides predetermined diagnoses to patients and prescribes physical therapy that is not medically necessary.  See Compl. at ¶¶ 54-60. According to State Farm, upon re-examination, Dr. Abu Farha "renders the same predetermined diagnosis, and sends the patient back to the [defendant] Clinics for another four weeks of the same physical therapy." Id. at ¶ 59.

Abu Farha also argues that State Farm has not alleged mail fraud with particularity – "what statements were fraudulent or how it claims any specific statements were fraudulent" – in compliance with Fed. R. Civ. P. 9(b). Abu Farha Br. at 22.  State Farm has provided, however, attachments to the complaint listing the claims for which it contends Dr. Abu Farha provided a fraudulent diagnoses (and the dates those claims were mailed), examples of his allegedly fraudulent disability certificates, and his initial examination findings. Compl. at Exs. 1-A, 6, 7.  In the context of a RICO action, State Farm has alleged fraud with sufficient particularity.  "In complex civil RICO actions

involving multiple defendants, Rule 9(b) does not to require that the "temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be stated with particularity, but only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme."Aiu Ins. Co. v. Olmecs Medical Supply, Inc., 2005 WL 3710370 (E.D. N.Y. Feb. 22, 2005) (citation omitted).  In addition to the list of allegedly fraudulent claims, State Farm has specified the overall fraudulent scheme in the complaint, thereby satisfying the pleading requirements.  The court will deny Abu Farha's motion on this point.

     **D.**    **Unjust Enrichment**

     Abu Farha argues that State Farm cannot state a claim for unjust enrichment because an express contract – the insurance policy between State Farm and the insured – covers the same subject matter.  State Farm contends that there is no contract between it and Abu Farha governing Abu Farha's submission of fraudulent claims.  In any event, unless it is undisputed that there is an express contract between the same parties covering the same subject matter, State Farm is entitled to plead unjust enrichment as an alternative claim of relief.  See, e.g., Durant v. Servicemaster Co., 159 F. Supp.2d 977, 983 (E.D. Mich. 2001) (Gadola, J.).  The court will deny Abu Farha's motion in its entirety (as well as the joinder filed by Physiomatrix, Genex, Kazan, and Khanafer).

**III.**    **State Farm, Flannery, and Lefere's Motions to Dismiss Countercomplaint**

     State Farm and its employee adjusters, Michael Flannery and Nicole Lefere, have

filed motions to dismiss Physiomatrix and Genex's claims against them.

### A.     Civil Rights Claims

Physiomatrix and Genex ("the Clinics") allege that State Farm, Flannery, and

Lefere created a scheme to deny payment of the Clinics' bills, based upon the Arabic

descent of its healthcare providers, in violation of 42 U.S.C. §§ 1983, 1985(3), and 1986.

Under § 1983, a plaintiff must allege (1) a deprivation of a right secured by the

Constitution or federal statute; and (2) the alleged deprivation was committed under color

of state law. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). "To

demonstrate a private conspiracy under § 1985(3) the plaintiff must prove (1) a

conspiracy involving two or more persons, (2) for the purpose of depriving, directly or

indirectly, a person or class of persons the equal protection of the laws and (3) an act in

furtherance of that conspiracy (4) that causes injury to person or property, or a

deprivation of a right or privilege of a United States citizen." Collyer v. Darling, 98 F.3d

211, 233 (6th Cir. 1996).  The plaintiff must also show the conspiracy was motivated by

racial or other class-based animus. Id.  Section 1986 is designed to punish those who aid

and abet Section 1985 violations; therefore, liability under § 1986 predicated on finding a

violation of § 1985.  Bartell v. Lohiser, 215 F.3d 550, 560 (6th Cir. 2000).

In the countercomplaint, the Clinics allege that State Farm "has initiated a broad-

scope concerted scheme to deny first party medical payments that have been charged by

properly licensed healthcare professionals who are of Arabic, or other racial minority,

backgrounds." Compl. at ¶¶ 6, 8.  The Clinics fail to allege facts in support of this bare,

conclusory allegation, however, particularly facts suggesting racial or other class-based

animus.  Indeed, in response to State Farm's motion, the Clinics invite the court to

"merely look at the last names of the health care profession[als] involved in this action

and understand the basis of the Clinics' allegations." Clinics' Br. at 13.  This type of

"unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient under Iqbal.

556 U.S. at 678.

The Clinics' failure to allege facts suggesting a discriminatory motive on the part

of State Farm, Flannery, or Lefere is also fatal to their Elliot-Larsen Civil Rights Act

claim.  The ELCRA prohibits the denial of the "full and equal enjoyment" of a "place of

public accommodation or public service" because of race or national origin.  M.C.L. §

37.2302(a).  Because the Clinics allege no facts raising even an inference of

discrimination, their ELCRA claim must be dismissed.

The Clinics' claims under § 1983 fail for the additional reason that State Farm,

Flannery, and Lefere are not state actors.  Sullivan, 526 U.S. at 50 (holding private

insurer's decision to withhold payment for disputed medical treatment under workers'

compensation scheme not attributable to the state).  The Clinics contend that State Farm is

a state actor because it adjudicates some claims assigned to it by the Assigned Claims

Facility ("ACF").  (It is not clear how many claims in this case were assigned to State

Farm by the ACF.)  The ACF is a statutory mechanism through which individuals injured

in auto accidents and who are uninsured or underinsured may obtain No-Fault benefits.

The ACF is maintained through an assessment on private insurers.  The Michigan

-13-

Secretary of State is charged with organizing and maintaining the ACF.  Once the ACF

assigns a claim to a private insurer like State Farm, the insurer evaluates the claim

pursuant to its own policies and procedures.  The fact that State Farm is assigned some

claims from the ACF is not sufficient to make it a state actor subject to constitutional

standards.  Sullivan, 526 U.S. at 52 ("Action taken by private entities with the mere

approval or acquiescence of the State is not state action.").

 Indeed, the Supreme Court has held that a private insurer's decision to withhold

payment for disputed medical treatment under a workers' compensation scheme was not

attributable to the state.  Sullivan, 526 U.S. at 51 ("The mere fact that a business is

subject to state regulation does not by itself convert its action into that of the State for

purposes of the Fourteenth Amendment.").  The Court found that there was not "a

sufficiently close nexus between the State and the challenged action of the regulated

entity so that the action of the latter may be fairly treated as that of the State itself." Id. at

52.  Sullivan is directly on point here and it precludes the Clinics' § 1983 claims.

 The court will dismiss the Clinics' claims pursuant to §§ 1983, 1985(3), 1986, and

the Elliot-Larsen Civil Rights Act.

 **B.** **RICO Claims**

 The Clinics contend that State Farm is refusing to pay claims submitted by the

Clinics without reviewing whether the claims are payable under the No-Fault Act.  The

Clinics allege that State Farm, its employees, and purported "independent" medical

examiners conspired to wrongfully issue automatic claim denials submitted by the

Clinics.  According to the Clinics, State Farm committed mail fraud by issuing

"investigation letters" to them and Explanation of Review forms containing false

information about why claims were being denied.

      "Mail fraud consists of '(1) a scheme to defraud, and (2) use of the mails in

furtherance of the scheme.' 'A scheme to defraud includes any plan or course of action by

which someone uses false, deceptive, or fraudulent pretenses, representations, or promises

to deprive someone else of money.' . . . When pleading predicate acts of mail or wire

fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff

must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify

the speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent.'" Heinrich v. Waiting Angels Adoption Serv. Inc., 668 F.3d

393, 404 (6th Cir. 2012) (citations omitted).

      The Countercomplaint alleges that in 2011, "the State Farm Defendants

commenced their predetermined pattern of activity to wrongfully deny each and every

claim submitted" through Physiomatrix and Genex.  Countercompl. at ¶¶ 44-45.  The

Clinics further allege that the State Farm Defendants "would issue through the United

States Mail form 'investigation letters' at various stages of the claim process, which

contained false and misleading information and statements as to the propriety of the

charges sought to be paid to Plaintiffs." Id. at ¶ 47.  "Subsequent to the issuance of the

purported 'investigation letters,' the State Farm Defendants again utilized the United

States Mail to issue predetermined explanation of benefit ("EOB") letters, which

contained false and misleading information and statements as to the propriety of the

charges sought to be paid to Plaintiffs, in order to fraudulently deny the payment of

benefits due and owing under the Act." Id. at 49. See also Countercompl. at ¶¶ 108-113.

The Clinics allege that the "information contained in the [investigation letters] . . .

implying a basis to deny claims and the information denying such claims was false, was

false when made, and was known by the author of such letters to be false when made." Id.

at ¶ 109.  The Clinics do not specify, however, what "information" in the investigation

letters or explanation of benefit letters was false.  Nor do they specify the claims that

State Farm has allegedly fraudulently denied.  The Clinics' bare allegations of fraud do

not satisfy Rule 9(b) particularity requirement and do not sufficiently allege predicate acts

of racketeering to state a claim under RICO.

Indeed, the Clinics' claim is essentially that State Farm did not remit payment as

required under its insurance policies – this claim sounds in contract, not fraud.  See

Chamberlin v. Hartford Financial Serv., Inc., 2005 WL 2007894 at *2-3 (S.D.N.Y. Aug.,

19, 2005) (dismissing RICO claim because insurer's failure to pay healthcare provider's

claims sounded in contract, not fraud).  Therefore, the court will dismiss the Clinics'

RICO claims.

### C.     Tortious Interference

In order to plead tortious interference with contract, the Clinics must plead the

following elements: (1) the existence of a contract; (2) a breach; and (3) unjustified

instigation of the breach by the defendant.  Mahrle v. Danke, 216 Mich. App. 343, 350

(1996).   The elements of a claim of tortious interference with business expectancy are:

"(1) the existence of a valid business relation (not necessarily evidenced by an

enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on

the part of the defendant interferer; (3) an intentional interference inducing or causing a

breach or termination of the relationship or expectancy; and (4) resulting damage to the

party whose relationship or expectancy has been disrupted." Wausau Under. Ins. Co. v.

Vulcan Development, Inc., 323 F.3d 396, 404 (6th Cir. 2003).

        The Clinics allege that State Farm has tortiously interfered with their relationships

with their patients who are insured by State Farm by issuing blanket denials of claims.

The Clinics contend that it has become cost-prohibitive for them to treat patients who

hold State Farm policies.  The Clinics allege that they have a valid business relationship

with their patients and that State Farm has damaged those relationships by failing to pay

insurance claims.  The Clinics have not, however, identified any specific patient

relationship adversely affected, or patients that they turned away because they held State

Farm policies.  Accordingly, the Clinics' allegations do not have the requisite factual

support to satisfy Iqbal.  See Wilkey v. Hull, 366 Fed. Appx. 634 (6th Cir. 2010) ("Absent

some factual allegation that [the defendant's] actions ended or prevented a business

relationship, [the plaintiff] does not state a claim.").

## D.    Michigan Uniform Trade Practices Act

State Farm seeks dismissal of the Clinics' Michigan Uniform Trade Practices Act

claims, because the MUTPA does not provide for a private right of action.  It is true that

the MUTPA does not generally provide for a private right of action; however, the Clinics

cite "§ 500.2006 of the UTPA, which requires that an insurance company be penalized at

a rate of 12% per annum for the untimely payment of benefits.  Section 500.2006 is an

exception to the general rule that a private cause of action does not exist under the

UTPA." Geer v. Amex Assurance Co., 2010 WL 2681160 at *2-3 (E.D. Mich. Jul. 6,

2010).  To the extent the Clinics seek penalty interest under the MUTPA, they have

pleaded a viable claim; to the extent they seek other relief under the MUTPA, their claim

will be dismissed.

        The court will grant in part the State Farm defendants' motions, dismissing the

civil rights, RICO, and tortious interference claims, while allowing the MUTPA interest

claim to proceed.

        **E.      Request to Amend Countercomplaint**

        In their response brief, the Clinics request that they be given the opportunity to

amend their countercomplaint if the court finds any of their claims deficient.  The Clinics'

request is not properly before the court.  They have filed neither a motion to amend nor a

copy of the proposed amended pleading.  See L.R. 15.1; Begala v. PNC Bank, Ohio,

N.A., 214 F.3d 776, 783-84 (6th Cir. 2000); D.E. & J. Ltd. Partnership v. Conaway, 284

F. Supp.2d 719 (E.D. Mich. 2003); Louisiana Sch. Empls. Ret. Sys. v. Ernst & Young,

LLP, 622 F.3d 471, 486 (6th Cir.2010)).  The court is unable to discern how the Clinics

propose to amend their complaint or whether such amendments would cure the

deficiencies outlined here.  Therefore, the Clinics' request is denied.

-18-

**IV.**     <u>Kevin Clinton and Ruth Johnson's Motions to Dismiss</u>

The Clinics want the court to order Commissioner of Insurance Kevin Clinton, who regulates insurance in Michigan, to suspend, revoke, or limit the authority of State Farm or order State Farm to cease and desist its illegal actions toward the Clinics. The Clinics want the court to order Secretary of State Ruth Johnson, as administrator of the ACF, to order State Farm to cease and desist its illegal actions toward the Clinics. The Clinics are seeking only injunctive and declaratory relief against Clinton and Johnson.

The Clinics have not properly pleaded claims against Clinton or Johnson. These claims are barred by Eleventh Amendment immunity. <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 98-101 (1984). The Clinics contend that their claims fall within the narrow exception to Eleventh Amendment immunity set forth in <u>Ex Parte Young</u>, 209 U.S. 123 (1908). However, *"Young* abrogates a state official's Eleventh Amendment immunity when a suit challenges the constitutionality of a state official's *action*." <u>Children's Healthcare Is a Legal Duty, Inc. v. Deters</u>, 92 F.3d 1412, 1415 (6th Cir. 1996). Here, the Clinics do not allege any unconstitutional action on the part of Clinton or Johnson; rather, they allege unconstitutional action by State Farm. These allegations are insufficient to overcome Eleventh Amendment immunity. <u>See</u> <u>id.</u> (Moreover, as discussed above, State Farm is not a state actor subject to constitutional standards.) Accordingly, the court will grant Clinton and Johnson's motions to dismiss the Clinics' claims against them.

**ORDER**

IT IS HEREBY ORDERED that (1) Defendant Farha's motion to dismiss the

complaint is DENIED; (2) State Farm's motion to dismiss the countercomplaint is

GRANTED IN PART and DENIED IN PART; (3) Michael Flannery and Nicole Lafere's

motion to dismiss is GRANTED; (4) Kevin Clinton's motion to dismiss third-party

complaint is GRANTED; and (5) Ruth Johnson's motion to dismiss third-party complaint

is GRANTED, consistent with this opinion and order.


         s/John Corbett O'Meara
         United States District Judge

Date: February 12, 2013



     I hereby certify that a copy of the foregoing document was served upon counsel of
record on this date, February 12, 2013, using the ECF system.


         s/William Barkholz
         Case Manager