## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-cv-11500 |
| | ) |
| Physiomatrix, Inc., | ) Hon. John C. O'Meara |
| Genex Physical Therapy, Inc., | ) |
| Kallil I. Kazan, D.C., | ) Magistrate Judge David R. Grand |
| Naim Khanafer, D.C., | ) |
| Sami Abu Farha, M.D., | ) |
| Sami Abu Farha, M.D., P.C., | ) |
| Tete Oniang'o, M.D., | ) |
| Tete Oniang'o, M.D., P.L.L.C., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| And | ) |
| | ) |
| Physiomatrix, Inc., | ) |
| Genex Physical Therapy, Inc., | ) |
| | ) |
| Counter-Plaintiffs, | ) |
| v. | ) |
| | ) |
| State Farm Mutual Automobile Insurance Company, | ) |
| | ) |
| Counter-Defendant, | ) |
| | ) |
| | ) |
| | ) |

## DEFENDANTS/COUNTER-PLAINTIFFS' ANSWER IN OPPOSITION TO STATE FARM'S MOTION TO DISMISS PHYSIOMATRIX'S AND GENEX'S AMENDED COUNTER-COMPLAINT

NOW COME Defendants/Counter-Plaintiffs Physiomatrix, Inc., ("Physiomatrix") and

Genex Physical Therapy, Inc. ("Genex") (together "Clinics" or "Defendants/Counter-Plaintiffs"),

by and through counsel, to move this Honorable Court to DENY Plaintiff State Farm's Motion to

Dismiss Physiomatrix's and Genex's Amended Counterclaims (Doc. #97), for the reasons set

forth in this Court's Order Granting Motion for Reconsideration (Doc. #87) and in the attached

brief in support.

WHEREFORE, Defendants/Counter-Plaintiffs respectfully request this Court deny State

Farm's motion, award Defendants/Counter-Plaintiffs their attorney fees and costs so wrongfully

incurred in having to respond to State Farm's motion, and such other and further relief as is

consistent with equity and good conscience.


Respectfully submitted,

/s/Gary R. Blumberg

Dated:  July 5, 2013          Gary R. Blumberg, PC
                              **Gary R. Blumberg (P29820)**
                              *Attorneys for Counter and Third Party Plaintiffs*
                              *Physiomatrix, Inc., Genex Physical Therapy Inc.*
                              30665 Northwestern Hwy., Ste 200
                              Farmington Hills, MI  48334
                              (248) 626-9966
                              grblumberg@gmail.com


                              /s/Peter W. Joelson

                              Joelson Rosenberg PLC
                              **Peter W. Joelson (P51468)**
                              *Attorneys for Counter and Third Party Plaintiffs*
                              *Physiomatrix, Inc., Genex Physical Therapy Inc.*
                              30665 Northwestern Hwy., Ste 200
                              Farmington Hills, MI  48334
                              (248) 626-9966
                              pjoelson@joelsonrosenberg.com

2

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-cv-11500 |
| | ) |
| Physiomatrix, Inc., | ) Hon. John C. O'Meara |
| Genex Physical Therapy, Inc., | ) |
| Kallil I. Kazan, D.C., | ) Magistrate Judge David R. Grand |
| Naim Khanafer, D.C., | ) |
| Sami Abu Farha, M.D., | ) |
| Sami Abu Farha, M.D., P.C., | ) |
| Tete Oniang'o, M.D., | ) |
| Tete Oniang'o, M.D., P.L.L.C., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| And | ) |
| | ) |
| Physiomatrix, Inc., | ) |
| Genex Physical Therapy, Inc., | ) |
| | ) |
| Counter-Plaintiffs, | ) |
| v. | ) |
| | ) |
| State Farm Mutual Automobile Insurance Company, | ) |
| | ) |
| Counter-Defendant, | ) |
| | ) |
| | ) |

## BRIEF IN SUPPORT OF DEFENDANTS/COUNTER-PLAINTIFFS' ANSWER IN OPPOSITION TO STATE FARM'S MOTION TO DISMISS PHYSIOMATRIX'S AND GENEX'S AMENDED COUNTER-COMPLAINT

# TABLE OF CONTENTS

COUNTER-STATEMENT OF ISSUES PRESENTED ................................................... i

CONTROLLING OR MOST RELEVANT AUTHORITIES...................................... ii

CITED AUTHORITIES ........................................................................................... ii

INTRODUCTION .....................................................................................................1

COUNTER-STATEMENT OF FACTS .....................................................................1

ANALYSIS................................................................................................................2

I.  State Farm's Motion is Barred by the Law-of-the-Case Doctrine............................2

    A.  The Court Determined that the Clinics Alleged a Viable RICO Enterprise .................3

    B.  The Court Determined that the Clinics Alleged a Distinct RICO Enterprise .................5

    C.  The Court Determined that the Clinics Alleged Racketeering Activity.........................7

    D.  The Court Determined that the Clinics Alleged Distinct Fraud Claims ........................9

    E.  The Court Determined that the Clinics Alleged Causation .........................................10

II.  The Clinics May Recover Penalty Interest Pursuant to the MUTPA......................11

CONCLUSION........................................................................................................11

## COUNTER-STATEMENT OF ISSUES PRESENTED

I.     **Is State Farm's Motion to Dismiss Barred by the Law of the Case Doctrine?**
       The Clinics Answer:  Yes.

II.    **Do the Clinics Have Standing to Bring a Claim to Recover Penalty Interest**
       **Pursuant to MCL 500.2006?**
       The Clinics Answer:  Yes.

i

## CONTROLLING OR MOST RELEVANT AUTHORITIES

*Amini v. Oberlin Coll.,* 259 F.3d 493 (6th Cir. 2001)...................................................7
*Boyle v. United States,* 556 U.S. 938 (2009) ..............................................................5
*Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 128 S. Ct. 2131 (2008).............10
*Brown v. Cassens Transport Co.,* 675 F.3d 946 (6th Cir. 2012) ..............................5, 6
*Davis v. Mut. Life Ins. Co. of New York,* 6 F.3d 367 (6th Cir. 1993) ............................5
*Geer v. Amex Assurance Co,* 09-11917, 2010 WL 2681160 (E.D. Mich. July 6, 2010)...............11
*McCready v. Michigan State Bar Standing Comm. on Character & Fitness,* 926 F. Supp. 618, (W.D. Mich. 1995).............................................................................................3
*United States v. Todd,* 920 F.2d 399 (6th Cir.1990) ....................................................2

Fed. R. Civ. P. 12(b)(6)...............................................................................................1
Michigan Uniform Trade Practices Act, MCL 500.2006 ............................................11
Michigan No-Fault Act, MCL 3101, et seq ...................................................................9

## CITED AUTHORITIES

*Ashcroft v. Dept. of Corrections,* 05CV488, 2007 WL 1989265 (W.D.N.Y. 2007) ......................3
*Begala v. PNC Bank, Ohio, N.A.,* 214 F.3d 776 (6th Cir. 2000) .....................................5
*Brittingham v. Mobil Corp.,* 943 F.2d 297 (3d Cir. 1991).............................................6
*Chamberlin v. Hartford Fin. Servs., Inc.,* 2005 WL 2007894 (S.D.N.Y. Aug. 19, 2005) ..............9
*Shields v. UnumProvident Corp.,* 415 F. App'x 686 (6th Cir. 2011).............................5

## INTRODUCTION

State Farm initiated this lawsuit (and a multitude of similar lawsuits) after failing in its efforts to influence legislation to reduce or limit the benefits Michigan insureds are entitled to under Michigan's No-Fault Act.  When State Farm was unable to modify the existing coverage for first-party benefits under the No-Fault Act through legislation, it launched a new claims-processing strategy designed to avoid paying healthcare providers for services they provide to State Farm's insureds.  State Farm also resorted to indiscriminately filing lawsuits against healthcare providers, attorneys, and other persons, in furtherance of State Farm's plan to collect No-Fault insurance premiums, but avoid honoring its obligations to its insureds.

State Farm's Motion to Dismiss (Doc. #97) is State Farm's third desperate attempt to avoid liability for the fraudulent and unlawful acts it perpetrates against healthcare providers and insureds in the State of Michigan.  State Farm's latest Motion to Dismiss (Doc. #97) is nothing more than a restatement of its previous Motion to Dismiss (Doc. #44) and its response to the Clinics' Motion for Reconsideration (Doc. #79).  This Court has already ruled on each issue raised in State Farm's Motion to Dismiss (Doc. #97), and determined unequivocally that the Clinics' Amended Counter-Complaint meets the applicable pleading standards to survive a motion pursuant to Fed. R. Civ. P. 12(b)(6).

## COUNTER-STATEMENT OF FACTS

The Clinics' Amended Counter-Complaint alleges that State Farm, along with various "independent medical examination" doctors and other co-conspirators, utilizes an unlawful and fraudulent process to delay and/or deny insurance claims, at the expense of its insureds and the healthcare professionals who treat its insureds.  The Clinics' Amended Counter-Complaint describes the fraudulent scheme perpetrated by State Farm, IME doctors, IME companies, and

1

other accomplices in detail. The Court initially dismissed the Clinics counter-complaint (Doc. #70), but reconsidered its decision and determined that the Clinics' Amended Counter-Complaint met the applicable pleading requirements. (See Doc. #87). As authorized by Doc. #87, and to protect their business and patients, the Clinics filed their Amended Counter-Complaint (Doc. #91).

## ANALYSIS

In its Order Granting Motion for Reconsideration, the Court not only granted the Clinics leave to amend their counter-complaint, it also made specific findings and determinations regarding the Clinics' claims and the adequacy of their Amended Counter-Complaint. In its Motion (Doc. #97), State Farm completely ignores the Court's reasoning, and mischaracterizes case law and the Clinics' pleadings. For the reasons set forth herein and by the Court in its Order Granting Motion for Reconsideration (Doc. #87), State Farm's Motion to Dismiss should be denied in its entirety.

### I. State Farm's Motion is Barred by the Law-of-the-Case Doctrine.

The Court gave careful and thoughtful consideration to the Clinics' Amended Counter-Complaint and to the issues raised by State Farm in its attempts to have the Clinics' claims dismissed. (Doc. #87). Throughout its Order, the Court cites to specific paragraphs of the Clinics' Amended Counter-Complaint, and to case law and the Federal Rules of Civil Procedure to support its conclusion that the Clinics' Amended Counter-Complaint meets the pleading requirements for fraud and RICO.

Under the law-of-the-case doctrine, "a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *United States v. Todd,* 920 F.2d 399, 403 (6th Cir.1990). The doctrine is discretionary; however, "courts should

2

be loathe to revisit prior decisions absent extraordinary circumstances." *McCready v. Michigan State Bar Standing Comm. on Character & Fitness*, 926 F. Supp. 618, 620-21 (W.D. Mich. 1995) aff'd, 100 F.3d 957 (6th Cir. 1996). State Farm has not presented any "extraordinary circumstance" that would justify abandoning the doctrine.

State Farm asserts that "the decision to grant leave to amend is in no way a decision on the ultimate merits of the parties' claims," quoting *Ashcroft v. Dept. of Corrections*, 05CV488, 2007 WL 1989265 (W.D.N.Y. 2007). The court in *Ashcroft* granted the plaintiff leave to amend its complaint, but later dismissed portions of the amended complaint on motion by the opposing party. In that court's order granting leave to amend the complaint, the court granted the plaintiff's motion for leave to amend the complaint, but made no findings regarding the merits or adequacy of the amended complaint, and even specified a deadline before which the opposing party must either answer or move to dismiss the amended complaint. State Farm presents the quote as a well-settled rule, rather than a clarification made by one court in the context of a particular case.

## A. The Court Determined that the Clinics Allege a Viable RICO Enterprise.

The Court previously considered State Farm's argument that the Clinics fail to allege a viable RICO enterprise: "State Farm argues that amendment will be futile because [the Clinics] have not alleged the existence of a distinct enterprise; [or] the existence of a viable RICO enterprise . . . **The court disagrees**." Despite the fact that the Court expressly rejected this argument, State Farm continues to argue that the Clinics failed to plead facts to show that State Farm and its co-conspirators have a common purpose and functioned as a unit for any period of time.

3

Participation in the RICO enterprise is not limited to when State Farm initially receives and processes a No-Fault claim.  The purpose of the RICO enterprise is to prevent the insured and/or third-party claimant from receiving No-Fault benefits by fraudulently denying claims, allowing State Farm, the IME doctors, and other accomplices to retain money that would otherwise be paid to insureds.   To achieve this purpose, the enterprise must delay processing the claims, manufacture medical reports to justify the delay or denial of the claims, and make false communications to the insureds and third-party claimants to conceal the true purpose of the enterprise.

State Farm argues that each member of the enterprise must be involved in "claims processing" to be culpable for the enterprise's unlawful acts.  Presumably, "claims processing," as the phrase is used by State Farm, refers to a specific phase during State Farm's internal review of an insurance claim.  The Clinics allege that the enterprise's activities extend beyond the "claims processing" phase — indeed, that the enterprise has created its own system of processing No-Fault claims that includes frivolous litigation, independent medical examinations, and coercive "settlement" negotiations.  (Doc. #91, ¶ 12).

The Court recognized the enterprise's purpose as the "fraudulent, blanket denial of claims," (Doc. #87, p. 3), as alleged in paragraphs 7-9 and 34-42 of the Amended Counter-Complaint.  (Doc. #91).  The Court further determined that the Clinics alleged a relationship between State Farm and the IME doctors ("State Farm hires the doctors to lend legitimacy to the blanket denial of claims," Doc. #87, p. 2), and that the enterprise has functioned since at least 2010.  (Doc. # 91, ¶¶ 34-42, 71-72, 106).  State Farm hires the IME doctors through IME companies, thereby incorporating the IME companies into the enterprise.  (Doc. #91, ¶ 79).  The Court concluded that the Amended Counter-Complaint contained allegations for each element

4

articulated in *Boyle v. United States*, 556 U.S. 938 (2009); therefore, State Farm's Motion to Dismiss should be denied.

### B.  The Court Determined that the Clinics Alleged a Distinct RICO Enterprise.

The Court addressed State Farm's argument that the Clinics failed to allege a RICO enterprise distinct from State Farm and its employees, expressly finding that the Clinics alleged a RICO enterprise comprised of State Farm and independent medical examiners, including Dr. Justin Riutta, M.D.. (Doc. # 87, p. 2-3; Doc. # 91 ¶ 38, 79, 82).  State Farm cites to *Brown v. Cassens Transport Co.*, 675 F.3d 946 (6th Cir. 2012) and *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776 (6th Cir. 2000) for the rule that a corporation is not liable under RICO for "participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members." State Farm claims that Dr. Justin Riutta and the other IME doctors are State Farm's agents, and therefore cannot combine with State Farm to form a distinct RICO enterprise.  This is a misinterpretation of the Clinics' Amended Counter-Complaint.

"RICO forbids the imposition of liability where the enterprise is nothing more than a subdivision or a part of the person, the requirement does not run the other way.  Indeed, RICO requires that the person be employed by or associated with the enterprise." *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 378 (6th Cir. 1993).  The Clinics do not allege that the IME doctors and IME companies are somehow employed by State Farm; the IME doctors and IME companies work in concert with State Farm as part of the RICO enterprise, rendering fraudulent medical opinions and testimony in exchange for payment.

In *Shields v. UnumProvident Corp.*, 415 F. App'x 686 (6th Cir. 2011), the Sixth Circuit held that the plaintiff failed to plead a distinct RICO enterprise because the plaintiff's complaint listed the defendant and its "various subsidiaries, affiliates . . . independent contractors," as the

5

RICO enterprise, *and* because the plaintiff failed to show that the various entities functioned as a unit. The Sixth Circuit was quoting the plaintiff's complaint, not setting forth a rule that independent contractors cannot possibly join with a corporation to form a RICO enterprise.

"Without allegations or evidence that the defendant corporation had a role in the racketeering activity that was distinct from the undertakings of those acting on its behalf, the distinctiveness requirement is not satisfied." *Brittingham v. Mobil Corp.*, 943 F.2d 297, 302 (3d Cir. 1991). In *Brittingham*, the court held that the defendant corporations and their advertising agencies did not constitute a distinct enterprise because the advertising agencies were the agents of the corporations and did nothing more than conduct the normal affairs of the defendant corporations. *Id.* However, the Clinics allege that State Farm and the IME doctors and IME companies, acting in concert to wrongfully deprive insureds of No-Fault benefits, form the RICO enterprise. The Clinics' allegations are similar to those in *Brown v. Cassens Transport*, 675 F.3d 946 (6th. Cir. 2012), in which the alleged enterprise consisted of the defendant Cassens Transport, Co., its claims adjustor, and the doctor who evaluated the plaintiffs' injuries. The Sixth Circuit held that the alleged enterprise consisted of Cassens Transport and its claims adjustor because the plaintiff alleged that the claims adjustor acted as an agent for, or in concert with, Cassens Transport, Co. (*Id.* at 968). State Farm and the IME companies through which State Farm finds its IME doctors may constitute the RICO enterprise. The Clinics do not allege that Dr. Justin Riutta or the other IME doctors are employed by State Farm; rather, State Farm uses IME companies to retain IME doctors to render opinions that State Farm presents as "independent," often in the context of litigation. The fact that Justin Riutta and the other IME doctors provide testimony on State Farm's behalf does not make them agents of State Farm. The IME doctors' testimony and reports are crucial to the effort to unlawfully deny No-Fault claims,

6

and State Farm cannot provide such reports and testimony from its own employees — it necessarily must come from doctors who at least appear to be "independent" and impartial. The IME doctors and companies participate in the RICO enterprise through activities that cannot be undertaken by State Farm itself, thus State Farm's role in the RICO enterprise is distinct from the role of the IME doctors and IME companies, and its individual employees.

### C. The Court Determined that the Clinics Alleged Racketeering Activity.

The Court expressly held that the Clinics' Amended Counter-Complaint "meets the heightened pleading requirement for fraud and pleads the elements of the predicate acts of mail fraud under RICO." (Doc. #87, p. 2). State Farm concedes that the Clinics identify the time, place, and content of the alleged misrepresentations, but argue that this is insufficient because the Clinics do not identify the time, place, and content of *every* alleged misrepresentation. The Clinics specify that the investigation letters and other communications attached to the Counter-Complaint are some *examples* of fraudulent communications.

The Clinics allege that State Farm sends investigation letters containing false statements that State Farm "has not yet made a determination of its obligation to pay" and that the matter "is presently under investigation." (Doc. #91 ¶ 62). State Farm then sends "Explanation of Benefits" ("EOB") letters that conceal the true status of the claim and the reason the claim is delayed or denied. (Doc. #91, ¶ 68, 86). The Amended Counter-Complaint contains a detailed list of the fraudulent communications State Farm and its co-conspirators sent to the Clinics. (Doc. # 91, ¶ 86). In determining whether to grant a Rule 12(b)(6) motion, the Court may consider exhibits attached to the complaint. *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997)). The exhibits to the

7

Amended Counter-Complaint identify the dates of the fraudulent communications, and the person(s) making the communications.

The Clinics' allegations in the Amended Counter-Complaint and exhibits thereto allow the Court to make a reasonable inference that the communications made by State Farm in the investigation letters and EOBs were false. State Farm attempts to contradict this inference by arguing that the EOBs corresponding to some of the investigation letters show that a portion of the No-Fault claims were paid. For instance, State Farm alleges that two of the EOBs for patient AB show that all claims listed in the two EOBs were paid. State Farm does not address the other investigation letters that correspond to EOBs showing that benefits for AB were not paid. Showing that the first two sets of claims were paid does not preclude the inference that the remaining claims that were not paid were also not "investigated" as State Farm represented in the investigation letters, particularly in light of Nicole Lefere's testimony.

State Farm contends that Nicole Lefere "investigated" various claims by contacting State Farm's attorneys. Nicole Lefere testified that she contacted State Farm's attorneys, but did not mention any type of investigation or inquiry as to the medical necessity of the treatment rendered by the Clinics. Determining the medical necessity of the treatment should be the main focus of an investigation of a claim that State Farm delayed or denied based on a finding that the treatment rendered was not *medically* necessary. (Doc. #91, ¶ 65). The Amended Counter-Complaint and exhibits thereto, taken as a whole, permit the reasonable inference that State Farm falsely represented that it was investigating certain claims and that it had not yet determined its obligation to pay under circumstances when it was not investigating the medical necessity of a claim, or had decided not to pay the claim prior to sending the investigation letter.

8

**D.  The Court Determined that the Clinics Alleged Distinct Fraud Claims.**

The Court determined that the Clinics "have pleaded a fraudulent scheme beyond a mere breach of contract," distinguishing this case from *Chamberlin v. Hartford Fin. Servs., Inc.,* 2005 WL 2007894 (S.D.N.Y. Aug. 19, 2005).

State Farm is an insurer under the Michigan No Fault Act.  Under MCL § 500.3105(1), insurers, such as State Farm, are liable to pay for benefits for bodily injury arising out of the "ownership, operation, maintenance or use of a motor vehicle."  State Farm's duty to pay PIP claims submitted by insureds or by the healthcare providers who render treatment to insureds arises out of a statute, not only out of a contract between State Farm and the Clinics or insureds. State Farm owes a statutory duty to its insureds to pay PIP benefits as required in the Act.  It follows that State Farm owes the healthcare providers who treat the insureds the duty to pay third party PIP claims.

The Clinics are not merely seeking to enforce their contract with State Farm.  The Clinics are trying to protect their property and business, as well as insureds' access to healthcare services.  The Clinics seek monetary damages for the claims that are unpaid or wrongfully delayed, but even if State Farm pays in full all of the claims it owes the Clinics, it will not stop State Farm from continuing its scheme to unilaterally alter the Michigan No Fault Act.  The remedies available to the Clinics pursuant to the No Fault Act or relevant contracts are not sufficient.  The Clinics request declaratory and injunctive relief because monetary damages alone will only compensate the Clinics for past wrongs, and will not protect the Clinics in the future. The damages available to the Clinics under a contract are insufficient, and the Clinics' RICO claim will allow the Clinics to obtain sufficient remedies for State Farm's wrongful acts.

### E. The Court Determined that the Clinics Allege Causation.

The Court held that the Clinics "have sufficiently alleged a direct injury as a result of State Farm's alleged fraud," specifically that State Farm, through its fraudulent scheme, forces the Clinics to accept reduced payments or initiate litigation to recover payment. (Doc. #87, p. 4). The Clinics allege that the enterprise's fraudulent acts forced them to initiate litigation to recover payment for benefits that were due and payable under the Michigan No-Fault Act. (Doc. # 91, ¶ 37). State Farm's argument that the Clinics initiated litigation because the claims were denied, and not because the Clinics relied on the false representations in the investigation letters, is faulty, and ignores the Clinics' allegations that wrongfully denying claims is part of State Farm's fraudulent scheme. Significantly, it is not necessary for the Clinics to establish that they relied on State Farm's misrepresentations. "No showing of reliance is required to establish that a person has violated 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail fraud." *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 649, 128 S. Ct. 2131, 2139 (2008). State Farm fraudulently and wrongfully denied No-Fault claims, and in many cases, justified the denial of the claim by buying an opinion and testimony from an IME doctor to support the denial. The Clinics were forced to sue State Farm due to State Farm's fraudulent and wrongful denial of claims. In some cases, the Clinics delayed filing suit because State Farm represented that it was investigating a claim; when the Clinics realized that State Farm was not, in fact, investigating the claim, the Clinics filed suit. The Clinics further allege that State Farm's fraudulent conduct continues to cause injury by interfering with the Clinics' ability to treat patients. (See Doc. #91, ¶ 66, 76-77).

10

**II.   The Clinics May Recover Penalty Interest Pursuant to the MUTPA.**

The Court allowed the Clinics to maintain their claim under the MUTPA, only to the

extent the Clinics requested relief permitted under the statute.  (See Doc. # 70, p. 18).  The

Clinics seek relief "pursuant to MCL 500.2006" (Doc. #91, F), which consists of penalty interest

provided for under the statute.  See *Geer v. Amex Assurance Co*, 09-11917, 2010 WL 2681160

(E.D. Mich. July 6, 2010).  Accordingly, the Clinics may maintain their claim under the MUTPA

and recover penalty interest as provided in MCL 500.2006.

## CONCLUSION

In its Order (Doc. # 87) the Court expressly addressed each of the issues raised by State

Farm in its Motion to Dismiss (Doc. # 97), and made the clear determination that the Clinics'

Amended Counter-Complaint is sufficient to survive a motion to dismiss.  For this reason alone,

State Farm's Motion to Dismiss should be denied.  In addition, State Farm's arguments in

support of its Motion to Dismiss directly contradict the express findings of this Court, ignore

relevant case law, statutes, and court rules, and are based on State Farm's narrow, incoherent

mischaracterization of the Clinics' Amended Counter-Complaint.  For the reasons set forth

above, the Clinics request this Honorable Court affirm its determinations and findings in the

Order Granting Motion for Reconsideration (Doc. #87), deny State Farm's Motion to Dismiss,

and award the Clinics their costs and attorneys fees so wrongfully incurred in having to respond

to State Farm's frivolous and impertinent Motion, and such other and further relief as is

consistent with equity and good conscience.

Respectfully submitted,

Dated: July 5, 2013

/s/Gary R. Blumberg
Gary R. Blumberg, PC
**Gary R. Blumberg (P29820)**
*Attorneys for Counter and Third Party Plaintiffs*
*Physiomatrix, Inc.,Genex Physical Therapy Inc.*
30665 Northwestern Hwy., Ste 200
Farmington Hills, MI  48334
(248) 626-9966
grblumberg@gmail.com

/s/Peter W. Joelson
Joelson Rosenberg PLC
**Peter W. Joelson (P51468)**
*Attorneys for Counter and Third Party Plaintiffs*
*Physiomatrix, Inc.,Genex Physical Therapy Inc.*
30665 Northwestern Hwy., Ste 200
Farmington Hills, MI  48334
(248) 626-9966
pjoelson@joelsonrosenberg.com

## PROOF OF SERVICE

The undersigned certifies that on July 5, 2013, the foregoing Defendants/Counter-Plaintiffs' Answer In Opposition To State Farm's Motion To Dismiss Physiomatrix's And Genex's Amended Counter-Complaint, Brief In Support of Defendants/Counter-Plaintiffs' Answer In Opposition To State Farm's Motion To Dismiss Physiomatrix's And Genex's Amended Counter-Complaint and this Proof of Service was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses as disclosed on the pleadings via the court's ECF system.

Dated: July 5, 2013                                  /s/ Susan C. Brohman

12